[No. 37002.   Department Two.   February 16, 1965.]

GUY NETH et al., Appellants, v. GENERAL ELECTRIC COMPANY, Respondent.*

Critchlow & Williams, for appellants.

Bogle, Bogle & Gates and J. Tyler Hull, for respondent.

DONWORTH, J.—Appellants (husband and wife) instituted this action to compel specific performance of an alleged agreement between appellant wife (herein referred to as Mrs. Neth) and her former employer, General Electric Company (respondent), to submit to a neutral arbitrator the propriety of her discharge from respondent's employ.

The facts are not in dispute. The only question is whether the statements made in various written or printed communications between respondent and appellant (which are referred to later in this opinion) constituted such an agreement. Mrs. Neth testified that no oral statement was made to her by any representative of respondent to the effect that she had a right to submit the matter of her discharge to a neutral arbitrator.

*Reported in 399 P. (2d) 314.

Mrs. Neth was continuously employed by respondent as a clerical worker at its Hanford Atomic Products Operation from October 1946 until April 10, 1961, when she was discharged. The propriety of her discharge is not involved in this case. She was never at any time represented for collective bargaining purposes by any union.

The production and maintenance employees of respondent who worked at the Hanford Operation were represented for collective bargaining purposes by a union known as the Hanford Atomic Metal Trades Council (referred to as HAMTC). In 1958, the union was engaged in an attempt to persuade respondent's clerical workers to join the union.

The trial court, after hearing the testimony and examining the 21 exhibits admitted in evidence, took the case under advisement at the conclusion of counsel's arguments. It later filed a memorandum decision in which it stated several reasons why appellants should not prevail.

About 4 months later, the court entered its findings of fact, conclusions of law and its judgment dismissing appellant's action. She then appealed therefrom to this court.

Appellants' assignments of error (besides referring to the trial court's disposition of the case) relate to two findings of fact (No. 13 and No. 14) and to the court's three conclusions of law.

Since the decision in this case depends upon the correct interpretation of the various written or printed communications between respondent and its clerical employees (and particularly Mrs. Neth), we deem it proper to set forth the following findings of fact (none of which are challenged by appellant except the last two):

"5. As a clerical worker, plaintiff Ada Neth was never employed by defendant in a capacity in which she was represented for collective bargaining purposes by any union. In 1958, the Office Employees International Union was engaged in attempting to persuade office clerical workers, including plaintiff Ada Neth, at defendant's Hanford Atomic Products Operation (hereinafter called 'HAPO') of the need for unionization. In connection with this unionization campaign an authorization card was circulated among clerical employees of defendant at HAPO containing ten points

which certain other production and maintenance employees of the defendant at HAPO had done through their union, the Hanford Atomic Metal Trades Council (hereinafter called 'HAMTC'), which represented such other employees for collective bargaining purposes. This authorization card stated inter alia, that union represented employees had obtained job security through establishment of seniority, jurisdiction, and arbitration of discharges.

"6. Defendant vigorously resisted unionization by circulating controverting information in written communications to its management and through management to its office employees (Exhibits 2, 3, 4, 7, 9, 11, 12, 17, 19, and 20). The information contained in the written communications so circulated by defendant was discussed with and made available to employees; however, no representations, over and beyond the information contained in said written communications were made by defendant to plaintiff Ada Neth.

"7. At the time the communications referred to in Finding of Fact No. 6 were circulated, HAMTC had entered into a collective bargaining agreement with defendant, covering certain production and maintenance employees HAMTC represented, pursuant to one provision of which HAMTC had the right to submit to arbitration (under conditions specified in said agreement) the propriety of a discharge of a union represented employee.

"8. Included in the communications circulated by the defendant in the context of the unionization campaign referred to in Finding of Fact No. 6, were the following three statements:

" 'It is important to explain that management must deal through unions in extending benefits or improvements to bargaining unit people. We are required by the National Labor Relations Act to do so in such matters as wages, hours and working conditions.'

" 'When management makes improvements in any of these areas, we can and do extend such improvements directly to all nonbargaining unit people. But in order to provide the same improvements to bargaining unit employees we are required by law to go through the union.'

" 'Office employees are already receiving on a voluntary basis all of the benefits received by bargaining unit employees.'

" 'On the basis of all the facts, we believe that office workers have absolutely nothing to gain from a union.'

"9. Defendant clearly advised clerical employees at HAPO not represented by a union, including plaintiff Ada

Neth, of the procedures defendant had established affording them an opportunity to be heard in the event such employee had a grievance. The 'Gotta Grievance' booklets issued by defendant in March of 1960 to all employees not represented by a union set forth all of the procedural steps established by defendant affording them an opportunity to be heard in the event any such employee had a grievance. The booklet stated that employees not represented by a union had a 3-step procedure as follows:

"1. *1st step*—presentation of the grievance orally or in writing to the employee's supervisor with an opportunity for the employee to have present one or two fellow employees and a representative from defendant's Relations Practices Operation;

"2. *2nd step*—if agreement were not reached at the 1st step, a meeting between the employee affected, the Section Manager, and the Relations Practices representative, again with the opportunity for the affected employee to have present at the meeting one or two fellow employees;

"3. *3rd step*—if agreement were not reached at the 2nd step, at the affected employee's request, the matter would be forwarded for review, to defendant's Manager-Relations Operation; the 'Gotta Grievance' booklet expressly stated that 'He will give your problem objective, unbiased consideration from a plantwide viewpoint, and provide the final, or third level answer.' The procedures set out in the booklet were in accordance with defendant's policy which was in effect for many years (Defendant's Exhs. 5, 6).

"10. Defendant also issued in May of 1960 to all clerical employees not represented by a union, including Mrs. Neth, a booklet entitled 'Your Job with General Electric' (Defendant's Exh. 21) which refers on pages 17 and 18 to the grievance procedure and states on page 18 that ' . . . the Manager-Relations Operation . . . will provide the final, or third level, review and answer . . . '.

"11. Plaintiff Ada Neth was at least twice told that any grievance she might have would be finally determined in the 3rd step provided for in the opportunity to be heard procedures set forth in the 'Gotta Grievance' booklet (Defendant's Exh. 7). Both of these booklets (Defendant's Exhs. 7, 21) were given to plaintiff Ada Neth subsequent to the three statements referred to in Finding of Fact 8 and prior to her discharge.

"12. The procedures set forth in the 'Gotta Grievance' booklet (Defendant's Exh. 7) were afforded by defendant to plaintiff Ada Neth and were exhausted by her. After re-

ceipt of defendant's final answer, pursuant to said procedures, plaintiff Ada Neth demanded that the propriety of her discharge and defendant's final answer be submitted to a neutral arbitrator. Defendant declined to submit to arbitration pursuant to such demand.

"13. The defendant never represented to employees not represented by a union, including plaintiff Ada Neth, that such employees had or would have the identical rights of union employees, and, specifically, defendant never represented to employees not represented by a union, including plaintiff Ada Neth, that they had or would have the right to submit the propriety of a discharge, or any other grievance, to neutral arbitration.

"14. The defendant's three statements, recited in Finding of Fact No. 8, state an opinion rather than a promise."

Mrs. Neth's basic contention is that either (1) the various statements contained in the written or printed communications given her by respondent (see finding No. 8) constituted an agreement between them that she was to have the matter of the propriety of her discharge from respondent's employ submitted to neutral arbitration, or (2) that the doctrine of promissory estoppel applies to the facts of this case.

In its memorandum decision, the trial court discussed various statements contained in these communications and, in holding that, taken together, they do not constitute a promise, said:

"1. To the alleged promise 'we can and do extend such improvements directly to all non-bargaining units' is attached a document in answer to the Union's claims in which under title 'established arbitration of discharges' the defendant clearly indicates non-union people do not have a right of arbitration. The defendant demeans arbitration of discharges and indicates it has fallen into disuse because the grievance procedure afforded prevents improper discharge of Union or non-union people. In the same document the defendant clearly indicates a difference in seniority which, while not controlling, certainly indicates all rights are not equal.

"2. The three statements on which the plaintiff relies state an opinion, albeit poorly worded, rather than a promise. The first statement 'When the Company makes *improvements*—we extend such *improvements* to all —' qualifies the promise by the term 'improvements', which is

a betterment, which is a matter of opinion. The second statement uses the term 'benefits' which means an advantage. What is an advantage is a matter of opinion sharply disputed by the parties. The third statement is even weaker 'on the basis of all the facts, we believe—nothing to gain from a Union'. This is completely qualified as an opinion. The terms 'improvement', benefit, 'we believe—nothing to gain' are not synonymous with the term 'right'—that to.which one has a just claim.

"3. Defendant's Exhibit 7, a booklet titled 'Gotta Grievance' sets out the non-union employees procedural steps for processing a grievance and states on Page 7, 'and provide the *final*, or third level answer. Defendant's Exhibit 21, a booklet titled 'Your job with General Electric', refers on page 18 to the grievance procedure and states 'the *final* or third level review.' Both of these booklets were given to the plaintiff subsequent to the three statements and before her discharge. Counsel argues that there is no relationship between the term 'grievance' and the term 'arbitration'. It is true that a grievance is a complaint or a claimed wrong, whereas arbitration is the device or method of hearing a controversy or wrong. If either Union or non-union personnel wished to arrive at arbitration, they must exhaust the grievance procedure, and the matter heard in arbitration, as to discharge, is obviously a grievance. In other words, the plaintiff has twice been told, that the only matter she might have to arbitrate, her grievance, is finally determined in accordance with Defendant's Exhibit 7.

"Accordingly, this Court does not reach the legal argument submitted by counsel, in that the initial step is missing —a promise. In substance, the defendant at no time ever represented to non-union employees that they would have the identical rights of union employees."

These are the evaluations made by the trial court in its findings of fact Nos. 13 and 14, to which appellant has referred in her assignments of error. Therefore, there was no error in making those findings.

■ Both parties cite our decision in *Spooner v. Reserve Life Ins. Co.,* 47 Wn. (2d) 454, 287 P. (2d) 735 (1955). That case held that, before a person can rely on an alleged promise (such as to pay a bonus to an employee under certain conditions), there must be a real promise to be enforced.

As stated in Restatement, Contracts § 90:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

We agree with the trial court that the general expressions stated in respondent's written and printed communications with Mrs. Neth, such as "Office employees are already receiving on a voluntary basis all benefits received by bargaining unit [union] employees" and "On the basis of all the facts, we believe that office workers have absolutely nothing to gain from a union," are expressions of opinion and do not in law constitute a promise on which Mrs. Neth had a right to rely with respect to neutral arbitration of her discharge.

These representations were taken from rather extensive letters and brochures in which the employer explained its statements by more specific discussion. One of these brochures was entitled "What HAPO Employees Have Done Through HAMTC . . . Union Claim . . . Facts . . . ." Therein the employer stated what the various benefits were that the union claimed to have gained for the union employees. The brochure explained with regard to each of the ten benefits claimed to have been obtained by the union whether or not the employer had supplied that particular benefit to the non-union employees, and, if not, why not. This brochure specifically pointed out that in at least two respects the "benefits" given to union employees were not really benefits in fact. These were (1) promotion and pay raises based on seniority only, and (2) arbitration of grievances. The brochure specifically stated that the seniority rights were not given to non-union employees, and implied, by noting the absence of union use and employee benefits, that the arbitration procedure was not given to non-union employees. It was only within the context of this kind of discussion that the employer made the general representations quoted above.

Furthermore, appellant was specifically advised that the grievance procedures for non-union employees involved a three-step procedure for the presentation and review of their grievances by the company administrative personnel. Nowhere in any of the materials distributed, or in the employer-sponsored discussion was there ever any reference to the specific procedure of arbitration of non-union employee grievances.

If appellant did in fact rely on the general statements of the employer, then her reliance was on employer opinion about the merit of union membership, based on the specific representations made by the employer. Appellant does not, and indeed cannot, deny the context of the written or printed communications containing those so-called "representations" or "promises." In our opinion, their context clearly shows that the statements were not promises but employer opinions which were clearly expressed as such by the employer.

It should be noted that, in order for appellant to have relied on these so-called "promises" or "representations," her act in reliance thereon would have to be more than a mere continuation in her employment with the employer. Under *Spooner v. Reserve Life Ins. Co., supra,* the act must be the one sought or requested by the employer. We realize that the employer did not specifically request any action on Mrs. Neth's part. Of course, the purpose of the information disseminated was to encourage each employee to refuse to sign an authorization for the union to represent the clerical employees, based on the facts as the employer viewed them. The weakness of appellant's claim in this latter regard is that she did not claim to have refrained from signing the authorization card because of her reliance on the employer's representations. The employer did not make the statements for the purpose of encouraging her continued employment. Yet, her continued employment is the only act alleged to have been done in reliance on the alleged promises. We fail to see wherein appellant has shown that she remained in respondent's employ in reliance on the statements of the employer.

In summary, not only was there no definite promise made to appellant that she was entitled to neutral arbitration in the event of her being discharged from her employment, but there is no legal basis in the facts as found by the trial court or in the evidence which we have reviewed above for her claim of promissory estoppel.

The trial court's judgment dismissing the action is affirmed.

FINLEY, OTT, HUNTER, and HAMILTON, JJ., concur.

May 21, 1965. Petition for rehearing denied.