Nita HINSON, Plaintiff-Appellant,

v.

Patricia CAMERON and Comanche County Hospital Authority, a public trust, Defendants-Appellees.

No. 64159.

Supreme Court of Oklahoma.

June 9, 1987.

Rehearing Denied Sept. 16, 1987.

Bill Hensley, Jeff Shaw, Hensley & Shaw, Lawton, for plaintiff-appellant.

Dale Reneau, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for defendants-appellees.

OPALA, Justice.

Two questions are presented on certiorari: [1] Did an at-will employee, dismissed for her failure to perform an assigned duty, state a cause of action in tort for wrongful discharge from employment? and [2] Did the employee manual alter an at-will relationship between the plaintiff and her employer? We answer both questions in the negative and reinstate the trial court's summary judgment for the defendants.

In an action against Patricia Cameron [Cameron or supervisor] and Comanche County Hospital Authority [Hospital], Nita Hinson [Hinson] sought damages for what we characterize either as a tort of wrongful discharge from employment or, in the alternative, as a breach of employment contract.

Hinson had been employed at the Hospital as a nurse's assistant from March 1968 until May 17, 1983. On the night of May 16, 1983 Hinson reported to work and reviewed the duty sheet assigned to her by Cameron, her supervisor. Hinson claims that she received no additional orders during her shift from her supervisor, written or oral. At the completion of her shift, Hinson checked the original assignment sheet against her copy to reaffirm that she had fulfilled all of her assigned duties. Forgetting to turn in her copy, Hinson returned to the Hospital the next morning, May 17, 1983. When she arrived she was asked to report to the personnel office and was terminated for not following orders.[1]

Hinson claims the order that precipitated her discharge was never given to her either at the beginning or during the fateful shift. She asserts that Cameron subsequently altered the assignment sheet and argues that the employee manual, which constitutes a part of her employment contract with the Hospital, protects her from discharge absent good cause.

I

## SUMMARY JUDGMENT MUST BE AFFIRMED

Summary judgment is proper only when no substantial controversy exists as to any material fact.[2] Under *tort rubric* Hinson argues that her supervisor altered the duty sheet to fabricate, in bad faith, a false reason for her termination. In support of her *breach-of-contract* theory Hinson contends the employee manual constitutes a binding agreement that protects her from dismissal other than "for cause." Hinson's conclusion is that she was fired without cause and that the Hospital's "manufactured" ground for her dismissal constitutes either a breach of her employment contract or a tort of wrongful discharge or both.

We hold that the trial court correctly rendered summary judgment for both the Hospital and the supervisor. Since Hinson makes no argument here that the supervisor improperly or tortiously interfered with her employment relation, we need not pause to consider whether the evidentiary material before us would support Hinson's tort claim against the supervisor alone for actionable interference with her employment status.[3]

---

1. The order allegedly assigned to Hinson was to give a patient an enema.

2. *Flanders v. Crane Co.,* Okl., 693 P.2d 602, 605 [1984].

3. See 76 O.S. 1981 §§ 6 and 8 which provide in pertinent part:
   "6. * * * [E]very person has, subject to the qualifications and restrictions provided by law, the right to protection from ... injury to his personal relations."
   "8. The rights of personal relations forbid: * * * 2. The abduction or enticement of a servant from his master. 3. An injury to a servant."

Oklahoma jurisprudence recognizes that one without a privilege, who intentionally interferes with an employment relationship by unlawful means or without a justifiable cause, becomes liable to the employee for any proximately caused harm. See *Del State Bank v. Salmon,* Okl., 548 P.2d 1024 [1976].
We note that some jurisdictions sanction suits by discharged at-will employees against their former co-employees or supervisors for intentional interference with their employment relationship. See *Cleary v. American Airlines, Inc.,* 111 Cal.App.3d 443, 168 Cal.Rptr. 722, 730, [1980]; *EIB v. Federal Reserve Bank of Kansas City,* 633 S.W.2d 432, 435–436 [Mo.App.1982] and *Yaindl v. Ingersoll-Rand Co., Etc.,* 281 Pa.

## II

### HINSON'S CONTENTIONS IN SUPPORT OF HER TORT CLAIM FOR WRONGFUL DISCHARGE

■ Hinson asserts she was wrongfully terminated by the Hospital which acted in reliance on Cameron's falsehood. In her deposition she relates the basis for her termination was her failure to follow an order that Cameron never gave her. She accuses Cameron of subsequently altering the duty sheet to insert a fictitious assignment. Hinson argues the employer was in bad faith and her dismissal wrongful because her employment was not reinstated after the Hospital had been informed of Cameron's false entry upon the duty sheet.

The appellate court's reversal of summary judgment against Hinson rests on *Hall v. Farmers Ins. Exchange.*[4] *Hall* came to be perceived as creating a new cause of action in favor of an at-will employee discharged in "bad faith." As we view *Hall*, it stands for the rule that an agent may recover from the principal when the latter has, in bad faith, deprived him of the fruit of his own labor.[5] The relationship between the Hospital and Hinson was that of master and servant, not principal and agent. Hinson is not claiming the Hospital deprived her of any earned income. In

short, the facts and the legal relations dealt with in *Hall* are clearly distinguishable from those in the present case.

## III

### WRONGFUL DISCHARGE

Under the American common-law rule, when the length of the master/servant relationship is unspecified by contract,[6] either the employer or employee can terminate the employment without liability. In some states this doctrine has been modified by exceptions that restrict the grounds on which an at-will employee may be discharged. The exceptions generally rest on three distinct theories: (a) public policy tort, (b) tortious breach of an implied covenant of good faith and fair dealing and (c) implied contract that restricts the employer's power to discharge.[7]

### A. PUBLIC POLICY UNDERPINNINGS FOR A WRONGFUL DISCHARGE TORT

■ An at-will employee's discharge has been declared to be actionable on several *public policy* grounds. Claims recognized under this rubric are those by employees dismissed for (a) refusing to participate in an illegal activity;[8] (b) performing an im-

---

Super. 560, 422 A.2d 611, 621 [1981]. *Contra,* see *Tameny v. Atlantic Richfield Co., infra* note 8, 610 P.2d at 1337 (footnote 12), where the court stated that a claim of intentional interference with contractual relations could not be viewed as stating a cause of action distinct from wrongful discharge.

**4.** Okl., 713 P.2d 1027 [1986].

**5.** *Hall v. Farmers Ins. Exchange, supra* note 4, 713 P.2d at 1031. See also *Grayson v. American Airlines, Inc.,* 803 F.2d 1097 [10th Cir.1986].

**6.** Oklahoma jurisprudence recognizes the so-called at-will employment doctrine. See *Foster v. Atlas Life Ins. Co.,* 154 Okl. 30, 6 P.2d 805 [1932] and *Singh v. Cities Service Oil Company,* Okl., 554 P.2d 1367 [1976].

**7.** Cf. *Murphy v. American Home Products Corp.,* 58 N.Y.S.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 [1983], where the court declined to recognize a tort claim for abusive discharge of an employee because such a significant change in the law's policy should be left to the legislature.

**8.** This public policy exception has been recognized in a number of cases where at-will employees have claimed they were discharged in reprisal for opposition to their employers' illegal or unethical activities. See *Petermann v. International Brotherhood of Teamsters,* 174 Cal. App.2d 184, 344 P.2d 25 [1959] (an employee was discharged for refusing to commit perjury); *Harless v. First Nat. Bank in Fairmont,* 162 W.Va. 116, 246 S.E.2d 270 [1978] (an employee was dismissed for refusing to violate a consumer credit protection law); *Trombetta v. Detroit, Toledo & Ironton R. Co.,* 81 Mich.App. 489, 265 N.W.2d 385 [App.1978] (the court recognized a cause of action where a former employee alleged that he was fired for refusing to falsify pollution control test results required by statute, but the employee failed to recover because the company showed that the employee was discharged for insubordination); and *Tameny v. Atlantic Richfield Co.,* 27 Cal.3d 167, 164 Cal. Rptr. 839, 610 P.2d 1330 [1980] (an employee was terminated for refusing to participate in a price-fixing scheme). Some jurisdictions treat the public-policy-exception claim as one in contract. *See, e.g., Bushko v. Miller Brewing Com-*

portant public obligation;[9] (c) exercising a legal right or interest;[10] (d) exposing some wrongdoing by the employer;[11] and (e) performing an act that public policy would encourage or, for refusing to do something that public policy would condemn, when the discharge is coupled with a showing of bad faith, malice or retaliation.[12]

Were we to measure Hinson's claim by any of these nationally recognized public policy exceptions, we would be nonetheless compelled to conclude that she has no actionable tort claim for wrongful discharge. Her termination was not in direct violation of any public policy. Neither the Hospital nor Cameron ordered Hinson to perform an illegal act or denied her an opportunity to exercise her legal rights. She was not prevented from performing an important public obligation nor was her termination occasioned by articulated concerns for the Hospital's legal or ethical misconduct.

## B. IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

The covenant of good faith and fair dealing that is implied in law requires that neither party do anything that will injure the right of others to receive the benefits of their agreement.[13] This theory is said to

*pany,* 396 N.W.2d 167, 171 [Wis.1986] and *Howard v. Dorr Woolen Company, infra* note 12.

9. Some courts find a public policy element in making citizens available for jury duty. These courts allow discharged employees to bring tort claims for vindication of dismissal from employment for absence from the workplace while on jury duty. See *Nees v. Hocks,* 272 Or. 210, 536 P.2d 512 [1975] and *Reuther v. Fowler & Williams, Inc.,* 25 Pa.Super. 28, 386 A.2d 119 [1978]. Oklahoma prohibits discharging an employee for absence from the workplace occasioned by jury service. 38 O.S. 1981 § 35.

10. Some states have, on public policy grounds, allowed an employee's claim for wrongful discharge for activities *consistent* with a legislative policy. See *Frampton v. Central Indiana Gas Company,* 260 Ind. 249, 297 N.E.2d 425 [1973]; *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 [1979] and *Lally v. Copygraphics,* 85 N.J. 668, 428 A.2d 1317 [1981], where an employee was dismissed for filing a workers' compensation claim. An Oklahoma employee who has filed a workers' compensation claim may not be discharged for exercising this statutory right. 85 O.S. 1981 § 5.
Other states have applied the public policy exception where the discharge was found to violate judicially fashioned notions of public policy but did not necessarily contravene any explicit statutory provisions. See *Palmateer v. International Harvester Co.,* 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 [1981], where an employee was discharged for supplying information about a fellow employee to local law enforcement authorities.

11. This public policy exception protects the so-called "whistleblower," a person who exposes wrongdoing on the part of his employer. The category covers cases of discharge for reporting internally, publicly, or both, illegal activities of the employer. I. (a) *Sheets v. Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 427 A.2d 385 [1980] (an employee was dismissed for complaints of poor-quality and mislabeled food, acts which violated state law safeguards against impurities in food, drugs and cosmetics); (b) *Harless v. First Nat. Bank in Fairmont, supra* note 8 (the employee was dismissed for complaints of employer's failure to comply with state and federal consumer credit protection laws); (c) *Petrik v. Monarch Printing Corp.,* 111 Ill.App.3d 502, 67 Ill.Dec. 352, 444 N.E.2d 588 [1982] (employee was discharged for complaints about embezzlement of corporate funds and possible criminal violation by other officers and employees) and (d) *Watassek v. Michigan Dept. of Mental Health,* 143 Mich.App. 556, 372 N.W.2d 617 [App.1985] (an employee was terminated for reporting to his supervisor incidents of patient abuse at a mental hospital before exhausting available administrative procedures). II. *A public policy exception was rejected in* (a) *Geary v. United States Steel Corporation,* 456 Pa. 171, 319 A.2d 174 [1974] (a sales representative for 14 years was discharged after he bypassed his superiors in an effort to have the company withdraw from the market what he considered to be an unsafe product) and (b) *Percival v. General Motors Corp.,* 400 F.Supp. 1322 [E.D.Mo.1975] (a General Motors employee for 27 years was forced to resign in retaliation for his efforts to correct what he deemed were incidents of corporate lying with respect to corporate offerings). See also, *The Emerging Law of Wrongful Discharge,* 40 The Business Lawyer 1, 8 [1984].

12. This two-part test was fashioned in recent New Hampshire cases for determining the actionability of wrongful discharge. See *Cloutier v. Great Atlantic & Pac. Tea Co.,* 121 N.H. 915, 436 A.2d 1140, 1143–1144 [1981]; *Howard v. Dorr Woolen Company,* 120 N.H. 295, 414 A.2d 1273 [1980] and *Pierce v. Ortho Pharmaceutical Corp.,* 84 N.J. 58, 417 A.2d 505, 513 [1980].

13. *Communale v. Traders & General Insurance Co.,* 50 Cal.2d 654, 328 P.2d 198, 200 [1958]; *Fortune v. National Cash Register Co.,* 377 Mass. 96, 364 N.E.2d 1251, 1257 [1977] and *Gates v. Life of Montana Ins. Co.,* 668 P.2d 213 [Mont. 1983].

have its basis in the general principle of good faith and fair dealing that is *infused by force of law into every contract*.[14] Whether a duty to terminate solely for good cause should be written into every at-will employment relationship is a question which has been addressed in a minority of jurisdictions.[15] Courts that considered this question have generally refused to imply such a duty. The concerns viewed as militating in favor of the concept's rejection are that undue restrictions placed on employers would infringe upon their legitimate exercise of managerial discretion.[16]

California has come closer than any other jurisdiction to implying a good-faith duty in all employment-at-will contracts.[17] Neither the logic of the California decisions adopting the argued-for implied covenant of good faith nor the scenario considered in these cases persuades us to fashion so broad a rule to govern the case before us. We hence decline today to impose upon the employer a legal duty not to terminate an at-will employee in bad faith.[18] Assuming there may be an implied covenant of good faith and fair dealing in every at-will employment relation, that covenant does not operate to forbid employment severance except for good cause. The court's adoption of a contrary view would "subject each discharge to judicial incursions into the amorphous concept of bad faith." [19]

## C. IMPLIED CONTRACT

Under the implied contract restrictions of the freedom to discharge an at-will employee, courts have found from particular facts that the parties had intended a contract of *permanent employment* or one of tenured job security. Factors which have been isolated as critical to evaluate whether an implied contract right to job security exists are: (a) evidence of some "separate consideration" beyond the employee's services to support the implied term, (b) longevity of employment, (c) employer handbooks and

**14.** *Tameny v. Atlantic Richfield Co., supra* note 8, 610 P.2d at 1337 (footnote 12), and *Cleary v. American Airlines, Inc., supra* note 3, 168 Cal. Rptr. at 728.

**15.** See *Pugh v. See's Candies, Inc.,* 116 Cal. App.3d 311, 171 Cal.Rptr. 917 [1981]; *Fortune v. National Cash Register Co., supra* note 13; *Brockmeyer v. Dun & Bradstreet,* 335 Wis.2d 561, 335 N.W.2d 834 [1983]; *see also* Diamond, *The Tort of Bad Faith Breach of Contract: When, If At All, Should It Be Extended Beyond Insurance Transactions?,* 64 Marq.L.Rev. 425 [1981].

**16.** See *Pugh v. See's Candies, Inc., supra* note 15, 171 Cal.Rptr. at 928; *Parnar v. Americana Hotels, Inc.,* 65 Hawaii 370, 652 P.2d 625, 629 [1982] and *Brockmeyer v. Dun & Bradstreet, supra* note 15, 335 N.W. at 838.

**17.** See *Cleary v. American Airlines, Inc., supra* note 3, where the plaintiff was discharged after eighteen years of employment. The court opined that termination without legal cause after that length of time "offends the implied-in-law covenant of good faith and fair dealing contained in all contracts, including employment contracts." See also *Cancellier v. Federated Dept. Stores,* 672 F.2d 1312, 1318 [9th Cir. 1982]. Two other cases frequently cited for this theory are *Monge v. Beebe Rubber Company,* 114 N.H. 130, 316 A.2d 549 [1974] and *Fortune v. National Cash Register Co., supra* note 13. Both *Fortune* and *Monge* are grounded on contract, not on tort law. They confine damages to those

recoverable in breach-of-contract claims. Moreover, the teaching of *Monge* was later limited to situations where the termination violates public policy. See *Howard v. Dorr Woolen Co., supra* note 12.

**18.** In *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 710 P.2d 1025 [1985], the court recognized that the implied-in-law covenant of good faith and fair dealing did exist in an at-will contract but refused to impose a duty to terminate only in good faith. See also Tepker, *Oklahoma's At-Will Rule: Heeding the Warnings of America's Evolving Employment Law?,* 39 Okla.L.Rev. 373, 422 [1986] and cases in footnote 334, which shows several jurisdictions that have declined to follow the implied-in-law good-faith covenant.

In *Wagenseller, supra* 710 P.2d at 1040, the court gave as its *rationale* for rejecting the implied-in-law good-faith duty that "*were we to adopt such a rule, we fear that we would tread perilously close to abolishing completely the at-will doctrine and establishing by judicial fiat the benefits which employees can and should get only through collective bargaining agreements or tenure provisions.... While we do not reject the propriety of such a rule, we are not persuaded that it should be the result of judicial decision.*" [Emphasis supplied.]

**19.** See *Parnar v. Americana Hotels, Inc., supra* note 16, 652 P.2d at 629, and *Brockmeyer v. Dunn & Bradstreet, supra* note 15, 335 N.W. at 838.

policy manuals, (d) detrimental reliance on oral assurances, pre-employment interviews, company policy and past practices and (e) promotions and commendations.[20]

Hinson maintains that the Hospital's employee manual constitutes a contract by implication and its provisions are binding. The employee manual contains information about hospital policies and employee benefits. According to Hinson's argument her termination was "without cause" because it was not based on any of the grounds listed in, and hence sanctioned by, the manual.[21] Thus, she concludes, her termination was in breach of the employment contract.

The Hospital asserts that the employee manual does not constitute a contract. It cites to several authorities for the basis of this argument.[22] According to the Hospital's position, Hinson had neither a written nor an implied contract but stood in the status of an at-will employee terminable at any time with or without cause.

In *Langdon v. Saga Corp.*,[23] the Court of Appeals held that an employer's personnel manual providing for certain employee benefits—e.g., vacation and severance pay—created a contractual basis for a ter-

minated employee's claim to those benefits.[24] The court used unilateral contract concepts to deal with the consideration problem. It held that it was possible to construe the employer's personnel manual "as an offer for a unilateral contract accepted by the plaintiff's continuing to work for the defendant and foregoing his option of termination."[25] It found that the benefits offered in the manual were calculated to induce employees to increase production and to remain with the company.[26]

Although we have yet to address directly the issue reached in *Langdon*, its resolution there appears compatible with our later pronouncement in a public employment case, *Miller v. Independent School District No. 56, Etc.*[27] In *Miller* we held that, in disputes involving nonrenewal of a school teacher's contract, a policy statement adopted by the board of education providing for written notification of reasons for nonrenewal was incorporated by implication in the teacher's contract of employment.

■■■ Hinson's action must also fail insofar as she advances her claim under an

---

**20.** Examples of the implied-in-law contract theories that courts have crafted from the general categories are: (a) job training where the costs are borne by the employee, *Ward v. Consolidated Foods Corp.*, 480 S.W.2d 483 [Tex.Civ.App. 1972]; (b) detrimental reliance followed by turning down offers of other employment, *Fulton v. Tennessee Walking Horse Breeders Association of America*, 63 Tex.App. 569, 476 S.W.2d 644 [1971] and *Maloney v. E.I. Du Pont de Nemours & Company, Inc.*, 352 F.2d 936 [C.A.D.C. 1965], *cert. denied*, 383 U.S. 948, 86 S.Ct. 1201, 16 L.Ed.2d 219 [1966]; (c) selling a business by people who then become employees of the buyer, *Stauter v. Walnut Grove Products*, 188 N.W.2d 305 [Iowa 1971]; (d) moving after being lured by an indication of lengthy employment, *Brawthen v. H & R Block, Inc.*, 28 Cal.App.3d 131, 104 Cal.Rptr. 486 [1972]; (e) implied or express promises about job security made during recruiting, *Weiner v. McGraw-Hill*, 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 [1982] and (f) statements about good working conditions, salary increases, promotions or special compensation programs, *Greene v. Howard University*, 412 F.2d 1128 [C.A.D.C.1969]; *Pugh v. See's Candies, Inc.*, *supra* note 15; *Neff v. General Electric Co.*, 65 Wash.2d 652, 399 P.2d 314 [1965] and *Toussaint v. Blue Cross and Blue*

*Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 [1980].

**21.** In support of her argument Hinson cites *Toussaint v. Blue Cross and Blue Shield of Michigan*, *supra* note 20.

**22.** *Foster v. Atlas Life Ins. Co.*, *supra* note 6; *Johnson v. National Beef Packing Company*, 220 Kan. 52, 551 P.2d 779 [1976]; *Edwards v. Citibank*, N.A., 74 A.D.2d 553, 425 N.Y.S.2d 327 [N.Y.Sup.Ct.1980] and *Reynolds Manufacturing Company v. Mendoza*, 644 S.W.2d 536 [Tex.Ct. App.1982].

**23.** Okl.App., 569 P.2d 524 [1976].

**24.** Similarly, in *Vinyard v. King*, 728 F.2d 428, 432 [10th Cir.1984], the court, seemingly applying Oklahoma public employment law, held that a written employee handbook specifying that permanent employees would not be dismissed without cause created a property interest in continued employment.

**25.** *Langdon v. Saga Corp.*, *supra* note 23 at 527.

**26.** *Langdon v. Saga Corp.*, *supra* note 23 at 527.

**27.** Okl., 609 P.2d 756 [1980].

implied contract theory.[28] Viewed in a light most favorable to her,[29] the manual lists but examples of *some, although not all,* grounds for termination.[30] In short,

**28.** For contractual protection from an at-will discharge Hinson relied below *solely* on the legal effect of the *printed text* in the employee manual. Neither of Hinson's two responses to the summary judgment motion identifies some promissory inducement *dehors* the manual as an issue of fact to be tried. Moreover, the evidentiary materials before us give *no* indication that the Hospital induced Hinson to accept or to continue her employment by a promised tenure that would shield her from termination except for stipulated causes. See Perritt, *Employee Dismissal Law and Practice,* §§ 4.12–4.14, pgs. 142–148 [1984]. Rule 13(b), Rules for District Courts, 12 O.S.Supp.1984, Ch. 2, App., provides that a party who seeks to resist summary judgment motion *must* file a response outlining the fact issues in the case. Appellate review *must always be limited* to the theories or issues shown by the record to have been actually tendered below. *Frey v. Independence Fire and Cas. Co.,* Okl., 698 P.2d 17, 20 [1985].

**29.** Hinson relies on the following portions of the employee manual to substantiate her claim that it was a part of the employment contract between her and the Hospital:

[1] Introductory cover letter from the president of the Comanche County Hospital Authority which was attached to the employee manual:

"Dear Employee:

This booklet was written to give you the answers to those most often asked questions about personnel policies and benefits, what we expect from you, and what you may expect of us on our combined efforts to serve the public well in this hospital. The more you learn about Comanche County Memorial Hospital, the better employee you will be, so study this booklet, refer to it often, and if your questions are not answered, talk to your supervisor.

Remember, there are more than 725 of us at Comanche County Memorial Hospital, yet each employee and each job is of equal importance. We depend on each person to do his best so our patients may regain their health. Whether your position is medical, or nonmedical, we need you to perform with speed and efficiency, yet we also need that extra important touch of friendliness beyond the call of duty.

Welcome to the team, and let us work together to make this the best hospital in Oklahoma."

[2] *Manual at page 3 (Objectives)*

"The objectives of Comanche County Memorial Hospital are: * * * 4. To provide employee benefits which will enable us to obtain and keep capable employees.

" * * * It shall be the policy of the hospital to:

1. *Offer steady employment to those who perform their duties conscientiously.* * * *"
[Emphasis added.]

[3] *Manual at page 4 (Getting Acquainted)*

" * * * Before the end of the probationary period, termination may be initiated *by either the employee or the hospital without obligation on the part of either."* [Emphasis added.]

[4] *Manual at page 11 (Work Hours and Overtime)*

" * * * Failure to work as schedules is a serious problem, and is grounds for termination."* [Emphasis added.]

[5] *Manual at page 12 (Employee Time Badges)*

" * * * Clocking in or out for anyone other than yourself is prohibited regardless of the reason and is grounds for termination. * * *"* [Emphasis added.]

**30.** [1] *Manual pages 17 and 18 (Causes for Termination)*

"The following offenses *can result in a written warning and/or immediate suspension for a period of three (3) days without pay. If the offense is noted a second time, it will result in immediate termination.*

1. Stopping work before scheduled work period is over.

2. Working overtime when not approved or scheduled.

3. Loafing or loitering during working hours.

4. Being away from designated work area or position for non-business reasons.

5. Willful violation of safety rules or hospital safety practices.

6. Unexcused and/or habitual absenteeism.

7. Unexcused an/or habitual series of tardinesses.

8. Obscene, abusive language and/or malicious gossip.

9. Horseplay or throwing things.

10. Threatening, intimidating, arguing or coercing fellow employees on the premises at any time for any purpose.

11. Leaving the hospital during working hours without permission of administration, department head or supervisor.

12. Gambling, lottery or any other game of chance on hospital premises at any time.

13. Repeated failure to be at work station on time.

14. Smoking in unauthorized areas."
[Emphasis added.]

[2] *Manual at pages 19 and 20 (Discharge)*

"This term refers to separation initiated by the department head and/or supervisor due to poor performance on the part of the employee. *Employees may be discharged without notice for violation of major rules and regulations such as:*

1. Any unexcused absence which cannot be satisfactorily explained to the department head.

2. Failure to report to work for three (3) consecutive days without notifying your supervisor.

the evidentiary materials before us, when assayed by the parameters of prevailing theories for upholding the actionability of an at-will employee's abusive discharge, do not tender any fact issues that support either a contract or a tort claim for wrongful severance from employment.

■ Assuming that Oklahoma would apply the public policy exception and would recognize an action for tortious discharge grounded on Cameron's falsified hospital records, there is here no nexus between the Hospital and the willful alterations attributed to the accused supervisor. It is neither alleged nor shown that the supervisor made the false entry as an agent or at the direction of the Hospital. Even if the Hospital did later become aware of the supervisor's unwarranted change of the duty sheet, its failure to rescind the discharge does not make Hinson's claim actionable unless, of course, the Hospital was then under a legal or contractual duty to hold a pretermination or post-termination inquest into the existence of permissible grounds for her dismissal.[31]

■ Although our survey of national jurisprudence on liability for wrongful discharge discloses only tort and contract cases, breach of a status-based duty might also be invoked as a theory of recovery for an actionable dismissal.[32] Were we to as-

---

3. Deliberate destruction or damage of hospital property or the property of fellow employees.

4. Refusal to complete assigned schedule or walking off the job without approval of immediate supervisor.

5. Falsifying records concerning hospital information, procedures or policies.

6. Stealing or attempting to steal property from the hospital, patients, visitors or employees.

7. Intoxication, drinking or possession of alcoholic beverages within the hospital at any time.

8. Fighting, sexually harrassing, attempting to injure or engaging in any activity which might endanger the life or well-being of a patient or employee.

9. Unauthorized use, possession or willful misuse of drugs.

10. Failure to follow instructions of supervisors pertaining to work.

11. Restriction, slowing down or delaying the work process of other employees.

12. Clocking in or out for another employee.

13. Soliciting, distributing written or other material, posting notices, or signs on the grounds or within the hospital without administrative approval.

14. Immoral conduct or indecency on hospital property.

15. Overstaying a leave of absence without approval.

16. Possession of illegal weapons on hospital property.

17. Organizational activities for any group or groups on hospital time and premises without administrative approval.

18. Willfully falsifying applications for employment.

19. Divulging confidential information concerning patients and employees.

20. Exchange of money, property or gifts between employees and patients.

21. Any willful action or neglect which results or could have results in placing the recovery of a patient in jeopardy.

22. Failure to follow hospital policy.

23. Other conduct that threatens the safety or reputation of patients, visitors, employees, hospital or physical property thereof."
[Emphasis added.]

31. No contention is made here that Hinson was a public employee within the protection of *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 [1985]. *Loudermill* dealt with a challenge by some dismissed school district employees to the propriety of their discharge. The Court held that a "tenured public employee" is constitutionally guaranteed the right to notice of discharge and to a pretermination opportunity to "present his side of the story." In addition to post-termination administrative hearing procedures affordable by state law, the discharged workers in *Loudermill,* all public employees, were also held entitled, in pretermination stages, to certain minimum standards of due process protection.

32. Whether parties litigant stand vis-a-vis one another in a principal/agent, employer/employee relation or as one independent contractor vis-a-vis another depends on their *status* which is *found from surrounding facts* rather than solely from contract. In case of a discrepancy between facts and contract, *facts* control over the *contrary provisions in the parties' agreement. Brewer v. Bama Pie, Inc.,* Okl., 390 P.2d 500, 502 [1964] and *Hogan v. State Industrial Commission,* 86 Okl. 161, 207 P. 303, 304 [1922]. Employment status, a mixed notion of contract and status, is determinable from all the facts and circumstances in evidence. *Bama, supra,* and Graveson, *Status in the Common Law,* pgs. 46–48 [The Athlone Press, University of London 1953].
Status-based notions, derived from historical antecedents, find acknowledgement in the case law of other jurisdictions. See *Pugh v. See's*

sess Hinson's claim as one for breach of a relational (status-based) duty, our answer would not differ from the assessment given that claim under both delictual and contractual analyses.

Certiorari granted; the Court of Appeals' opinion is vacated and the trial court's summary judgment is affirmed.

HARGRAVE, V.C.J., and HODGES, LAVENDER and SIMMS, JJ., concur.

DOOLIN, C.J., and WILSON and KAUGER, JJ., concur in part and dissent in part.

SUMMERS, J., concurs in result.

KAUGER, Justice with whom, DOOLIN, Chief Justice, and WILSON, Justice, join concurring in part and dissenting in part.

There are three things which particularly trouble me about the disposition of this case by the affirmance of the entry of summary judgment. The first is the attempt to distinguish *Hall v. Farmers Ins. Exchange,* 713 P.2d 1027, 1031 (Okla.1986), based on the majority's status-based approach which characterizes the relationship at issue as "master-servant" as opposed to

the "principal-agent" analysis utilized in *Hall.* Under Oklahoma's revised at-will doctrine as promulgated in *Hall,* I see no difference, as a matter of law, between master-servant and principal and agent.[1] The second is that the employee failed to avail herself of the grievance procedures contained in the manual furnished by the hospital before resorting to the courts.[2] The third is that there remains an unresolved question of fact concerning whether an employee may sue an employer for breach of contract on the theory that an employee manual, unilaterally published by the employer, may serve as a basis for altering the terms of an employment otherwise terminable at will.

Courts have followed three theories in resolving the third question. Several have concluded that employee manuals which delineate termination procedures or reasons for termination are not contractually binding on the employer.[3] Others have held that an employee manual which contains termination procedures is a unilateral offer of employment for which continued service by the employee may constitute both acceptance and consideration, thereby creating a contractual relationship.[4] Some have

---

*Candies, Inc., supra* note 15, 171 Cal.Rptr. at 920, and *Parnar v. Americana Hotels, Inc., supra* note 16. In both of the cited cases the court noted that the law of *master and servant* considers the relationship between an employer and an employee *as primarily one of status* rather than of contract. While an agreement between them would give rise to the relationship and might establish certain of its terms, *it is custom and public policy*—not the will of the parties—which defines the implicit framework of mutual rights and obligations. See also, *Protecting At Will Employees Against Wrongful Discharge: The Duty to Terminate Only In Good Faith,* 93 Harv.L.Rev. 1816, 1824 [1980].

**1.** In *Hall v. Farmers Ins. Exchange,* 713 P.2d 1027, 1031 (Okla.1986), the Court said: "The general rule of damages for breach of employment contracts is that the aggrieved party is entitled to recover an amount which will compensate him for all the detriment proximately caused by such breach, or which will be likely to result therefrom. (Citing 23 O.S.1981 § 21) Specifically, an employee wrongfully discharged may recover damages commensurate with the consequential injury."

**2.** However, this issue was not raised by the parties, and need not be considered on appeal.

*Peter v. Golden Oil Co.,* 600 P.2d 330–31 (Okla. 1979).

**3.** *LaRocca v. Xerox Corp.,* 587 F.Supp. 1002, 1004 (S.D.Fla.1984); *Beidler v. W.R. Grace, Inc.,* 461 F.Supp. 1013, 1016 (E.D.Pa.1978), aff'd mem., 609 F.2d 500 (3rd Cir.1979); *Sabertay v. Sterling Drug Inc.,* 114 A.D.2d 6, 497 N.Y.S.2d 655, 657 (1986); *Gates v. Life of Montana Insurance Co.,* 196 Mont. 178, 638 P.2d 1063, 1066 (1982); *Griffin v. Housing Authority,* 62 N.C. App. 556, 303 S.E.2d 200–01 (1983); *Muller v. Stromberg Carlson Corp.,* 427 So.2d 266, 270 (Fla.App.1983); *Shaw v. S.S. Kresge Co.,* 167 Ind.App. 1, 328 N.E.2d 775, 778 (1975).

**4.** *Carver v. Sheller-Globe Corp.,* 636 F.Supp. 368, 371 (W.D.Mich.1986); *Mannikko v. Harrah's Reno, Inc.,* 630 F.Supp. 191, 196 (D.Nev.1986); *Duldulao v. Saint Mary of Nazareth Hosp.,* 115 Ill.2d 482, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987); *Lewis v. Equitable Life Assur. Soc.,* 389 N.W.2d 876, 883 (Minn.1986); *Wooley v. Hoffman LaRoche, Inc.,* 99 N.J. 284, 491 A.2d 1257, 1267 (1985); *Southwest Gas Corp. v. Ahmad,* 99 Nev. 594, 668 P.2d 261 (1983); *Toussaint v. Blue Cross & Blue Shield,* 408 Mich. 579, 292 N.W.2d 880, 884 (1980); *Dahl v. Brunswick Corp.,* 227 Md. 471, 356 A.2d 221, 224 (1976); *Hercules*

determined that an employee manual may be binding on the employer, not on the theory of contract, either actual or implied, but on the basis of the employee's reasonable and detrimental reliance on the terms of the manual.[5]

The majority opinion has properly disposed of the first, and possibly the second, theory. However, the question of whether the hospital is bound under the doctrine of promissory estoppel—that is the employees' detrimental reliance on the grounds for termination being restricted to those listed in the manual—leaves a substantial question of material fact to be determined.[6] The issue of whether the manual restricted termination for cause only renders summary judgment premature.[7]

It is readily apparent that the resolution of this fact question requires the promulgation of some definitive standards to guide trial courts in resolving an employee's legal or equitable claim based on an employer's failure, either to follow the termination procedures delineated in an employee manual unilaterally published by the employer and not expressly made a part of the original employment agreement, or to terminate an employee for reasons other than those set forth therein.[8]

An employee who is hired in Oklahoma for an indefinite period of time is an at-will employee whose employment may be terminated by either party without cause, and without notice, and whose termination does not in and of itself give rise to a cause of action.[9] However, the presumption of at-will employment cannot be considered absolute but is, rather, rebuttable under certain circumstances. I would not adopt a rule which would automatically incorporate an employee manual into the employment contract, and find that an employee may be terminated only in accordance with its terms, any more than I would embrace the opposite rule which would regard employee manuals as no more than gratuitous expressions of general company policies which have no bearing on the employee's contractual rights.

Here, summary judgment for the employer was sustained even though the employee claimed that the only reasons for termination were set forth in the manual, and that the only reason that she could be fired was for cause. In a similar case, *Continental Airlines, Inc., v. Keenan,* 731

*Powder Co. v. Brook filed,* 189 Va. 531, 53 S.E.2d 804, 808 (1949); *Rulon-Miller v. Intern. Bus. Mach. Corp.,* 162 Cal.App.3d 241, 208 Cal.Rptr. 524, 529 (1984); *Langdon v. Saga Corp.,* 569 P.2d 524, 527 (Okla.App.1976); *Carter v. Kaskasia Community Action Agency,* 24 Ill.App.3d 1056, 322 N.E.2d 574, 576 (1974). In *Miller v. Ind. Sch. Dist. No. 56,* 609 P.2d 756, 759 (Okla. 1980), we held that a policy adopted and published by the board of education providing for written notification of reasons for nonrenewal of a teacher's contract was by implication included in the teacher's contract of employment, creating a duty on the part of the board. We said: "We hold the policy statement here in question was by implication included in Mrs. Miller's contract of employment, and conclude that appellee Board had the authority delegated to it to in turn create a duty and it did so create a duty on its part as expressed in the above quoted 'General Policies' rule to notify appellant of nonrenewal of her contract, giving reasons and to grant her a public evidentiary hearing upon her having made written request therfor, prior to final Board Action. It appears beyond question that the Board, apparently believing it was not bound by the policy rule here involved, refused to comply with it."

5. *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708, 711–13 (Colo.1987); *Kinoshita v. Canadian Pacific Airlines,* 724 P.2d 110, 116–17 (Haw. 1986); *Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 685 P.2d 1081, 1088 (1984); *Toussaint v. Blue Cross & Blue Shield,* note 4, supra; *Matthews v. Federal Land Bank,* 718 S.W.2d 220, 225 (Mo.App.1986).

6. The doctrine of promissory estoppel as discussed in the Restatement (Second) of Contracts § 90 (1970) has been incorporated into Oklahoma common law. See *Roxana Petroleum Co. v. Rice,* 109 Okl. 161, 235 P. 502, 506 (1924); and *Bickerstaff v. Gregston,* 604 P.2d 382, 384 (Okla.App.1979).

7. See cases cited in note 5, supra. See also *Sherman v. Rutland Hosp., Inc.,* 146 Vt. 204, 500 A.2d 230, 232 (1985); Tepker, "Oklahoma's At-Will Rule: Heeding the Warnings of America's Evolving Employment Law?", 39 Okla.L.Rev. 373, 414–17 (1986).

8. Tepker, note 7, id.

9. *Singh v. Cities Service Oil Co.,* 554 P.2d 1367, 1369 (Okla.1976).

P.2d 708, 711–12 (Colo.1987), the Colorado Supreme Court reversed a summary judgment and remanded for reconsideration of the employer's motion for summary judgment, the questions of whether an employee may sue an employer for breach of contract on either the theory that an employee manual, unilaterally published by the employer, may serve as a basis for altering the terms of an employment agreement, or that the employee relied to his detriment on the termination procedures contained in the manual. The Court held that: 1) Because the burden of establishing the nonexistence of a genuine issue of fact was on the moving party,[10] the employer had the initial burden of showing that there was nothing in the record to rebut the presumption that the employee was terminable at will. 2) If the employer makes such a showing, the burden shifts to the employee to show that there is a triable factual issue as to whether the termination procedures constituted an unilateral offer for which the employee's initial or continued employment constituted an acceptance and provided the requisite consideration, or that the listing of grounds for termination constituted a promise upon which the employee reasonably relied to her detriment. 3) If the employee shows there is a material issue of fact in regard to these matters, summary judgment is inappropriate, if the employee does not, summary judgment should be sustained.[11]

Employers may be accountable for the promises they make, and the policies they adopt, when those promises and policies induce employee reliance or form part of a contract.[12] This is a delicate and evolving area; therefore, the process of judicial interpretation must be sensitive, yet realistic. It must distinguish between carefully developed employer representations upon which an employee may justifiably rely, and general platitudes, vague assurances, praise, and indefinite promises of permanent continued employment. If employers have offered assurances upon which employees may justifiably rely, the employee may have a basis for recovering damages without regard to the characterization of the claim under classical contract or tort theories.[13] Obviously, difficult issues of construction may arise when courts confront testimony concerning either an employer's oral statements or ambiguous representations are made by the employer in an employee handbook. Nevertheless, it should be remembered in such instances, the employers do retain actual control over their fate. In most cases, as here, the employer writes and disseminates the handbook or document upon which the employee relied in the wrongful discharge claim.[14] If employers desire to retain the discretion to fire at will, such policies may easily be included in the handbook.[15]

**10.** *Celotex Corp. v. Catrett,* 477 U.S. 317, ——, 106 S.Ct. 2548, 2552, 91 L.Ed.2d. 265, 273 (1986).

**11.** *Continental Air Lines v. Keenan,* note 5, supra.

**12.** See note 7, supra.

**13.** Tepker, "Oklahoma's At-Will Rule", see note 7, supra.

**14.** Employers should review all written materials for any reference that could be construed as limiting the ability to terminate and delete the reference. In addition, employers who want to retain the right to terminate at will should include a conspicuous disclaimer of job security in employee handbooks. The disclaimer also should give the employer a unilateral right to modify policies. Employees should review their performance appraisal system, document job related deficiencies, and establish performance improvement guidelines. These steps will pre-

vent contradictions when the terminated employee challenges the employer's decision. Employers should have in place a method to review in advance all proposed terminations or layoffs. A review mechanism will prevent arbitrary terminations and ensure uniformity in terminations. In those instances where termination is warranted, employers should standardize their termination methods. At least two people should be involved and the termination should be properly documented. The employee should be told the basis for the termination and be given the opportunity to be heard. R. Tisman, "How to Prevent Employee Suits for Unjust Dismissal," National Law Journal, Vol. 9, p. 20 (May 11, 1987).

**15.** *Liekvold v. Valley View Community Hosp.,* 141 Ariz. 544, 547, 688 P.2d 170, 174 (1984); *Pine River State Bank v. Mettille,* 333 N.W.2d 622, 627 (Minn.1983); *Morris v. Lutheran Med. Ctr.,* 215 Neb. 677, 340 N.W.2d 388, 391 (1983); *Mau v. Omaha Nat'l. Bank,* 207 Neb. 308, 299

The employee began working as a nurse's assistant for the employer in March of 1968. The Comanche County Memorial Hospital Employee Handbook is dated 1982–1984. The employee was fired on May 17, 1983. In the employee's deposition, she was asked if it were her understanding that the hospital must have cause before she could be discharged. Her response was, "It's written in black and white." Opposing counsel then asked if she were relying on the manual when she made that statement. The employee answered, "Yes." The employer's answers in response to the employee's interrogatories acknowledged that the employer's termination policy was to act in good faith and in fair dealing. In response to the interrogatory question, "For what other non-listed reasons have employees been terminated?" The employer answered, "Voluntary terminations and retirement initiated by the employee. In addition, we had a reduction in force January 7th, 8th, and 9th 1985."

Here, we need not extend the *Hall* doctrine from its mooring in contract theory into the arena of torts. My concern is that there remains a question of fact concerning whether the manual contained the only reasons for which the employee could be fired, and if the employer breached its contractual duty in its termination of the employee. Tort remedies and contract remedies *may not* be available for *any* breach of an employer's promise not to fire except for just cause. It is only after the employee proves that the employer acted for legally intolerable motives that courts should consider remedies beyond compensation for the employee's reliance and expectation interests. Courts should adhere strictly to proof of bad faith, malice, or public policy breach as a threshold breach for potential tort recovery.[16]

The employers' motion for summary judgment was premised, and apparently sustained, on the fact that the employee had no written or oral contract with the hospital, and that because she was an at-will employee, the hospital had an absolute right to discharge her from its employment. Even when the basic facts are undisputed, motions for summary judgment should be denied, if under the evidence, reasonable persons might reach different inferences or conclusions from the undisputed facts.[17] In my opinion, summary judgment for the employer was improperly granted because the issues of whether the hospital manual was an unilateral offer of employment, or whether the grounds for termination listed in the manual were binding on the employer because of the employee's reasonable and detrimental reliance thereon, were not considered. Summary judgment is proper only when the pleading, affidavits, depositions, or admissions establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[18] In appraising the sufficiency of a petition, the accepted rule is that a petition should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle her to relief.[19] For these reasons, the trial court erred in entering summary judgment in favor of the employer.

N.W.2d 147, 151 (1980); Tepker, "Oklahoma's At-Will Rule: Heeding the Warnings of America's Evolving Employment Law?", see note 7, supra.

**16.** Tepker, "Oklahoma's At-Will Rule", see note 7, supra.

**17.** *Wilds v. Universal Resources Corp.,* 662 P.2d 303, 307 (Okla.1983); *Munley v. ISC Financial House, Inc.,* 584 P.2d 1336, 1338 (Okla.1978).

**18.** *Celotex Corp. v. Catrett,* see note 10, supra.

**19.** *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80, 84 (1957).