**Thomas LaROCCA, Plaintiff,**

v.

**XEROX CORPORATION, Defendant.**

**No. 84–6093–CIV–JAG.**

United States District Court,
S.D. Florida, N.D.

July 9, 1984.

Roger Stanway, Hollywood, Fla., for plaintiff.

Sherryll Martens Dunaj, Miami, Fla., for defendant.

## ORDER OF DISMISSAL

GONZALEZ, District Judge.

Plaintiff Thomas LaRocca suffered a disability requiring him to temporarily stop working for his employer Xerox Corporation ("Xerox"). When he finally could perform some light work, he informed the company, whereupon Xerox allegedly sought out work for him. All the while, Mr. LaRocca was receiving disability benefits from the company. When the company could find no work that plaintiff was willing to do, the company permanently terminated its employment relationship with plaintiff, and all disability also ended. Plaintiff subsequently brought suit against the company seeking the disability benefits that he claims are owed under a policy manual allegedly in existence at the time that Xerox hired him. Defendant moves to dismiss plaintiff's amended complaint (docket # 13), or in the alternative seeks a summary judgment in its favor (docket # 14). The court has considered these motions, and being otherwise duly advised, it is ORDERED AND ADJUDGED that defendant's motion for summary judgment be and the same is hereby GRANTED.

*Analysis*

■ Florida courts have long held, as has this court, that employment agreements are terminable at the will of either the employer or the employee unless the agreement contains a definite term of employment. *See* cases cited in *Muller v. Stromberg Carlson Corp.,* 427 So.2d 266, 270 (Fla. 2d DCA 1983); *DeMarco v. Publix Super Markets, Inc.,* 360 So.2d 134 (Fla. 3d DCA 1978); *Forde v. Royal's Inc.,* 537 F.Supp. 1173 (S.D.Fla.1982) (Gonzalez, J.); *cf. Chastain v. Kelly-Springfield Tire Co.,* 733 F.2d 1479, at 1482 (11th Cir.1984) (applying Alabama law); *Whitfield v. Finn,* 731 F.2d 1506, 1508 (11th Cir.1984) (applying Alabama law); *White v. I.T.T.,* 718 F.2d 994, 997 (11th Cir.1983) (applying Georgia law).

In this case, the employment agreement was oral. We do not know whether, at the time plaintiff was hired, defendant made any references to the policy manual which allegedly provides disability benefits for plaintiff. If defendant made such representations to plaintiff, then the court must find the policy manual to be an independent contract if plaintiff is to rebut the evidence indicating that plaintiff's employment contract was terminable at the will of either the employer or the employee. Florida courts are reluctant to declare policy statements to be employment contracts unless there is an *express* reference in the statement to a period of employment and the benefits to accrue therefrom. *See Muller v. Stromberg Carlson Corp.,* 427 So.2d 266, 268–70 (Fla. 2d DCA 1983).

In *Muller,* the employee argued that the employer's policy of yearly merit reviews per a management memorandum created a series of annual employment contracts that obligated the employer to give the employee specific salary increases. The district court of appeals rejected the employee's argument, finding that the employer's memorandum did not create a separate employment contract because of its indefiniteness.* "An employee's entitlement to a

---

* In reviewing the case, the *Muller* court assumed that the employer had communicated its merit review policy to the employee at the time the latter began work. Observed the court, "There is no specific allegations that the [merit review] policy was communicated to [plaintiff], but even if there had been such an allegation, our

particular term of employment or to particular salary levels on the basis of criteria more subject to misunderstanding and dispute than definite terms in an employment contract is not, under the circumstances of this case, the province of a court of law." 427 So.2d at 268. The court's discussion of the legal significance of policy statements is particularly enlightening.

Appellant argues that we should adopt the law developing in some other jurisdictions which may allow policy statements by an employer to give rise to enforceable contract rights of employees without the parties' explicit mutual agreement. *See, e.g., Toussaint v. Blue Cross and Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980); *Protecting at Will Employees Against Wrongful Discharge: A Duty to Terminate Only in Good Faith,* 93 Harv.L.Rev. 1816 (1980). However, while the carefully reasoned opinion in *Toussaint* provides food for profound thought, Florida law does not reflect those views which appear to be based upon a perception of social or economic policy thought to be beneficial. We would have serious reservations as to the advisability of relaxing the requirements of definiteness in employment contracts considering the concomitant uncertainty which would result in employer-employee relationships. A basic function of the law is to foster certainty in business relationships not to create uncertainty by establishing ambivalent criteria for the construction of those relationships. *Toussaint* converts policy to contractual obligation in the interests of providing employee job security. "Policy" may be defined as an "overall plan embracing ... general goals ...." *Webster's New Collegiate Dictionary* (1981). If policy, as so defined, were to govern legal relationships, the law would cease to fulfill the foregoing basic function which includes providing meaningful criteria for predictable consequences. Even the foregoing *Harvard Law Review* Note recognizes that conclusion would not be different." 427 So.2d

the various courts which have adopted the position [plaintiff] asserts in this case "have failed to provide a coherent or complete doctrinal basis for the imposition of new obligations where the contracting parties theoretically could have, but have not, bargained for these obligations." 93 Harv.L.Rev. at 1817. Nor, as a matter of judicial practicality, are we convinced that the solutions offered by that Note, which essentially involve a case by case analysis of particular employer policies, would provide that coherence.

*Muller,* 427 So.2d at 270.

The plaintiff and defendant here provide the court with conflicting policy manuals. The manual proffered by plaintiff does not make mention of the nature of the relationship between plaintiff and defendant, nor does it say whether the policy manual itself constituted an independent contract. The ambiguity in plaintiff's documents renders them fatally defective under *Muller.* If the policy manual submitted by defendant (and coined well after defendant hired plaintiff) is to control, then plaintiff's case is even more troubled because the later manual specifically states that it is not to constitute an independent employment contract. Plaintiff's Memorandum in Opposition to Summary Judgment, Exhibit A. Thus, plaintiff is caught on the horns of a dilemma, because the old policy manual is too general and the newer one specifically disavows any intent to create an independent employment relationship.

■ Lacking any allegations in plaintiff's complaint that the defendant promised to make the policy manual binding or to make the employment relationship for a definite term, and lacking any language in the policy expressly providing that the manual is to constitute a separate employment contract, the court must grant defendant's motion for summary judgment.

One final comment is necessary. Plaintiff also submits that the defendant was obligated to "aggressively pursue" other

at 268.

employment for plaintiff while he was disabled. Plaintiff's argument assumes that the defendant's policy manual is a separate employment contract thereby obligating the defendant to so act. But the preceding analysis already has explained that the policy manuals do not give rise to an independent duty to act. Take away the policy manual, and plaintiff's argument fails.

Accordingly, the defendant's motion for summary judgment is granted, and this case is DISMISSED.