523 So.2d 706 (1988)
Jack LURTON, Appellant,
v.
MULDON MOTOR COMPANY, a Corporation, and Elizabeth Welles, Appellees.
No. BQ-20.
District Court of Appeal of Florida, First District.
April 6, 1988.
Richard P. Warfield of Levin, Warfield, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., Pensacola, J. Marshall Conrad *707 of Ausley, McMullen, McGehee, Carothers and Proctor, Tallahassee, for appellant.
Joe J. Harrell of Harrell, Wiltshire, Stone & Swearingen, Pensacola, for appellees.
NIMMONS, Judge.
Jack Lurton, plaintiff below, appeals from the final judgment of the circuit court denying his claim for damages for wrongful termination and for tortious interference with his employment relationship with defendant, Muldon Motor Company (hereinafter "Muldon").
In 1956, Frank Welles, president and shareholder of Muldon, a family-owned Ford dealership, contacted his longtime friend Jack Lurton, and offered him employment in the company so that together they might make their fortunes. Neither party discussed any length of service or conditions of termination. Appellant began his service as vice president and a director of the corporation. He also received a share of stock.
During his career with Muldon, appellant was assigned the responsibility of organizing and managing a truck leasing operation which was incorporated separately. Appellant received two of the six outstanding shares of stock. The leasing company prospered under appellant's direction. There was some testimony that appellant held his leasing company securities in trust for Muldon.
By 1969 or 1970, Muldon Motors' net worth had decreased below the minimum level which it was required to maintain under its financing arrangement with Ford Motor Credit Company. It was therefore concluded that the leasing company should become the wholly owned subsidiary of Muldon. In connection therewith, appellant's shares in the leasing company were transferred to Muldon.
During appellant's employment, he negotiated most of Muldon's loans. He was also called upon to individually guarantee notes and other lines of credit obtained by Muldon or the leasing company. He was appointed by American Road Insurance Company (a subsidiary of Ford Motor Company) as the countersigning agent in the State of Florida for policies of insurance on retail contracts issued by dealers. The commissions on these policies were paid directly to appellant who in turn endorsed them over to Muldon.
Shortly after his commencement with Muldon, appellant participated in the drafting of a policy manual for the firm which included a provision that employees would be dismissed only for "just cause."
At a board meeting in 1982, Frank Welles and his brother, Thomas Welles, got into an argument because Frank purportedly used company funds to pay for a life insurance policy on his life with his wife named as beneficiary. Appellant left the board meeting seeing this as a personal matter. After a while, Thomas called appellant back into the meeting, and the meeting continued without further incident. That evening, Frank related to his wife, also a Muldon board member and shareholder, that he was very upset because someone, either appellant or someone else, had given Frank's brother personal information about himself (Frank). Frank's wife, Elizabeth "Betty" Welles, put him to bed, and telephoned appellant. She caused her daughter to listen in on the conversation and take down in shorthand what was said. She asked appellant why he told Thomas personal information about Frank. A heated discussion ensued.
The next morning, appellant entered Frank's office and confronted him with the telephone call he had received from Betty. Appellant asked if Frank had lost faith in him to which Frank responded in the affirmative. Appellant asked Frank if he (appellant) should resign. Frank again answered affirmatively and said that he wanted him to resign when he reached age 65 a couple of months later. Subsequently, appellant told Frank that he would resign if they could reach a settlement. No settlement was agreed upon. Later on at a Muldon board meeting, appellant read a letter he had sent to the board members stating that he would not offer a resignation, and that he did not wish to resign.
*708 The evidence was in dispute as to whether the appellant resigned or was fired. The trial court found that appellant did not resign but was terminated two months later when he reached age 65.
Appellant filed an action against Muldon Motor Company for wrongful discharge and against Elizabeth Welles for tortious interference with a business relationship. Frank Welles died prior to the non-jury trial.
As mentioned above, the trial court found that the appellant did not resign but was fired. The court further found that there was no contract such as would defeat the "at will" nature of the employment relationship and that the appellant was not entitled to require Muldon to establish any particular reason for Muldon's termination of appellant. The trial court found that there was no "additional consideration" flowing from appellant to Muldon such as would support an exception to the terminable at will principle. The trial court further found that in any event Muldon's pension and profit sharing plan would have required the separation of appellant at age 65 unless the board were to grant an exception. Finally, the court rejected the complaint's second count claiming tortious interference against Elizabeth Welles, the court finding that she had a legitimate business interest in the appellant's employment.
The trial court erred in its alternative determination that appellant's separation from Muldon would have been forced at age 65 solely on the basis of a provision of the pension plan which requires board action in order to retain any employee 65 or over. The only evidence in the record shows that such pension plan provision was never considered in regard to appellant  or in regard to any other employee for that matter. Thomas Welles testified that, prior to trial, he had not even seen that provision and the minutes of the board[1] do not reflect any consideration of such provision. Whatever the firm's reason for terminating appellant's employment, it is clear that the pension plan provision was never considered as a basis for termination and would not have been so considered.[2]
As to appellant's alleged resignation, it is clear that appellant had no desire to resign and was in fact terminated. He appeared at a board meeting prior to his "resignation" date and read a letter to the board stating he wished to continue in the employ of the firm and would not voluntarily resign.
Appellant attacks the trial court's determination that appellant's termination was sustainable because his employment was terminable at will. We affirm that determination. Appellant raises two arguments in this regard, both of which we reject. First, he argues that a condition of discharge for just cause was implied as a matter of law because he gave his employer "additional consideration." Second, he argues that company policy reflected in employee manuals and other memoranda established a just cause requirement as a prerequisite to termination.
The general rule in Florida is that a contract for employment for an indefinite term is terminable at the will of either the employee or employer, and an action for wrongful discharge will not lie. E.g. DeMarco v. Publix Super Markets, Inc., 360 So.2d 134 (Fla. 3d DCA 1978), aff'd 384 So.2d 1253 (Fla. 1980). One of the few exceptions to this rule, the doctrine of "additional consideration" as set out in Chatelier v. Robertson, 118 So.2d 241 (Fla. 2d DCA 1960), is inapplicable to the instant case. In Chatelier, the plaintiff transferred plant food formulas and other trade secrets to the defendant in exchange for employment for life, as long as he was not *709 disabled from carrying out his duties. Chatelier held that the plaintiff's contract was enforceable since the contract was not merely one for employment, but included collateral consideration as well.
Unlike the instant case, the terms of the agreement in Chatelier existed during the formation of the employment relationship. The dispute pertained to the legal effect of such terms. The plaintiff argued that "for life" was a definite term, and defendant argued, in line with the general rule, that "for life" was an indefinite term creating an at-will contract. The court held the term "for life" to be enforceable as a definite term because it was supported by additional consideration. In the instant case, the doctrine is inapplicable as the evidence fails to support any agreed-upon terms with regard to termination at the inception of the employment.
Appellant argues that the later given consideration  namely, transfer of securities, co-signatures on promissory notes, and transfer of commissions on insurance policies  supports a requirement of good cause under the doctrine announced in Chatelier. However, even where consideration is executory at the inception of the employment agreement thus making the contract unenforceable until the consideration has been performed, the terms of the agreement sought to be enforced are in existence at the inception of the agreement. See Wright & Seaton v. Prescott, 420 So.2d 623 (Fla. 4th DCA 1982) (consideration lacking until sometime after inception of employment agreement, but terms existed from inception). In the instant case, there was no understanding at the inception of the employment as to termination rights or length of service. The mere performance of additional acts above and beyond the scope of one's duty as an employee cannot give rise, absent a bargained-for agreement, to a duty to terminate only for good cause. The narrow doctrine of "additional consideration" is not applicable in the instant case.
Neither does the policy manual expressing a firm policy of dismissal for just cause amount to a condition of employment. The evidence is uncontested that at the time of employment, neither the appellant nor Frank Welles discussed termination policy. The policy manual, which appellant helped draft, was nothing more than expression of firm policy, not an enforceable contract term. As this court held in Bryant v. Shands Teaching Hospital and Clinics, 479 So.2d 165 (Fla. 1st DCA 1985), the personnel policies "were mere unilateral expectations, rather than the explicit mutual promises necessary to create a binding contractual term." Id. at 168. See also McConnell v. Eastern Air Lines, Inc., 499 So.2d 68 (Fla. 3d DCA 1986) (various letters, executive memoranda, and employee handbooks issued by employer assuring employees they would not be terminated without just cause).
The instant case is distinguishable from Falls v. Lawnwood Medical Center, 427 So.2d 361 (Fla. 4th DCA 1983), in which a summary judgment was reversed with a remand for the trial court to consider whether the policy manuals were part of the employment contract. The instant appeal, on the other hand, does not derive from a summary judgment, but instead from a final judgment after a full-blown trial. Although the trial court made no explicit finding that the manuals were not a term of the employment contract, such finding is implicit in the court's judgment. Moreover, the record would not support a contrary finding.
Finally, the appellant has failed to demonstrate error in the trial court's finding that Elizabeth Welles  herself a stockholder, director, and paid employee of Muldon  did not maliciously interfere with appellant's business relationship with Muldon. See Buckner v. Lower Florida Keys Hospital District, 403 So.2d 1025 (Fla. 3rd DCA 1981).
AFFIRMED.
SHIVERS and BARFIELD, JJ., concur.
NOTES
[1] Two versions of the minutes of the pertinent meeting were admitted, there being a dispute as to which was authentic. However, both versions are consistent on this point.
[2] Appellant expends much time asserting the invalidity of the pension plan provision, relying upon various state and federal age discrimination prohibitions. Inasmuch as the existence of such provision has no bearing on the proper resolution of this case, we need not further pursue this aspect of the judgment.