818 So.2d 574 (2002)
The QUAKER OATS COMPANY, etc., Appellant/Cross-Appellee,
v.
Dwayne JEWELL, et al., Appellees/Cross-Appellants.
No. 5D00-3393.
District Court of Appeal of Florida, Fifth District.
March 28, 2002.
Rehearing Denied June 10, 2002.
*575 Donald C. Works, III, and Juan C. Lopez-Campillo, of Jackson Lewis Schnitzler & Krupman, Orlando, for Appellant/Cross-Appellee.
Edward P. Jordan, II, of Edward P. Jordan, II, P.A., Clermont, for Appellee/Cross-Appellant.
PLEUS, J.
Nine hourly employees ("the Employees") of the Quaker Oats' Gatorade factory in Kissimmee sued their employer in a three-count complaint seeking overtime wages. Count I alleged a violation of section 448.01 claiming overtime pay for work in excess of ten hours per day. Count II alleged a breach of contract and asserted that Quaker Oats failed to pay overtime in accordance with provisions set forth in the company's employment manual.[1]
Quaker Oats is appealing the final judgment entered in favor of the Employees for a total of $103,831.09, as well as a subsequent judgment awarding them $212,520 in attorney's fees. The Employees cross appeal a directed verdict on their statutory wage claim brought under section 448.01.
We deal with the statutory wage claim first. Section 448.01, Florida Statutes (1997) provides:
(1) Ten hours of labor shall be a legal day's work, and when any person employed to perform manual labor of any kind by the day, week, month or year renders 10 hours of labor, he or she shall be considered to have performed a legal day's work, unless a written contract has been signed by the person so employed and the employer, requiring a less or greater number of hours of labor to be performed daily.
(2) Unless such written contract has been made, the person employed shall be entitled to extra pay for all work performed by the requirement of his or her employer in excess of 10 hours' labor daily.
We find that the trial court correctly concluded the statute does not apply to the Employees because they are hourly employees and not employed by the day, week, month or year.[2]
Next, we deal with the challenge to the final judgment in favor of the Employees. Quaker Oats argues the trial court erred in several ways which led to the jury verdict on the breach of contract claim. For simplicity of analysis, we have combined these alleged errors into three. First, *576 Quaker Oats contends the trial court erred as a matter of law by ruling that certain compensation policies contained in employee manuals could constitute part of an employment contract. Second, Quaker Oats claims the trial court erred in its failure to instruct the jury on the law regarding oral contracts.[3] Third, it complains the trial court erred in permitting Employees' counsel to repeatedly and continually, throughout the five-day trial, refer to the Quaker Oats' employment manuals as "contracts."
In support of their breach of contract claim, the Employees attached to the complaint a copy of the 1992 Handbook and the 1997 Handbook. The language of both was incorporated into the complaint by reference.
The 1992 Handbook stated that Quaker Oats would pay overtime to the five day workweek employees at the rate of time and one half for time over eight hours in any one day, or for greater than 40 hours in any one week. In addition, the 1992 manual gave the employer the right to change policy, which it did in 1997.
The 1997 Handbook contains the following:
The work week begins at 11:00 p.m. Sunday. All hours worked on either end of your shift belong to the day in which that shift begins. When the plant is operating under the 7 day work week schedule, check with your Resource for the latest policy and procedure.
Overtime Pay
Your rate at time and one-half (1-½) is paid for all hours worked:
1. During 5 day work week schedule, over eight (8) hours in any one day, or over forty (40) hours in any one week.
2. On Saturday and Sunday, except if Saturday and Sunday is part of your scheduled five (5) day work week.
3. During 7 day work week schedule,[4] check with your Resource for the latest policy and procedure.
Attached to both the 1992 and the 1997 Handbook was a cover letter which states, "This employee handbook does not create any contractual rights for you or the Company." Each of the Employees acknowledged in their "Applications for Hourly Employment with Quaker Oats" that no agreement for employment was valid unless with the express, written approval of the president or chief executive officer of Quaker Oats. The Employees never produced any express, written approval by the president or chief executive officer of Quaker Oats acknowledging that a so-called "contract" exists between Quaker Oats and the Employees.
This case raises the issue of whether policy statements in employment manuals can give rise to enforceable contract rights in Florida. Specifically, do the employee handbooks create a contractual duty on the part of Quaker Oats to pay for certain overtime?
It is well established Florida law that policy statements contained in employment manuals do not give rise to enforceable contract rights in Florida unless they contain specific language which expresses the parties' explicit mutual agreement that the manual constitutes a separate *577 employment contract. This long-standing principle was announced nearly 20 years ago in the seminal case of Muller v. Stromberg Carlson Corp., 427 So.2d 266 (Fla. 2d DCA 1983).
The Muller court was asked to deviate from the Florida case law and in declining, stated that:
Florida law does not reflect those views which appear to be based upon a perception of social and economic policy thought to be beneficial. We would have serious reservations as to the advisability of relaxing the requirements of definiteness in employment contracts considering the concomitant uncertainty which would result in employer/employee relationships.
Muller, 427 So.2d at 270.
Florida's second district rejected Muller's request to transform the employer's policies into binding contracts. The court saw "no justification to depart from long established principles that an employment contract requires definiteness and certainty in its terms." Muller, 427 So.2d at 268. A basic purpose of the law "is to foster certainty in business relationships, not to create uncertainty by establishing ambivalent criteria for the construction of those relationships." Id. at 270. The court reasoned that if company policies "were to govern legal relationships, the law could cease to fulfill" this purpose. Id. The court concluded that Muller's "mere expectations" that he would be given specific salary increases in return for his satisfactory job performance "are insufficient to create a binding term of employment." Id. at 268.
Two years later, Florida's first district also rejected several employees' request to transform their employer's policies into binding contracts. In Bryant v. Shands Teaching Hospital and Clinics, Inc., 479 So.2d 165, 168 (Fla. 1st DCA 1985), the court, citing Muller, held that the employer's personnel policies mandating that employees would be terminated only for cause were "mere unilateral expectations" and did not create binding contractual terms between Employees and their employer.
The Third District Court of Appeal became the next appellate court in Florida to reject an employee's request to transform his employer's policies into a binding contract. In McConnell v. Eastern Air Lines, Inc., 499 So.2d 68, 69 (Fla. 3d DCA 1986) (per curiam), an at-will employee, who was terminated from his employment, sued for breach of contract claiming that his employer issued various letters, executive memoranda and four employee handbooks assuring its employees that they would not be terminated without just cause. The court, citing Muller, held that the employer's "unilateral policy statements cannot, without more, give rise to enforceable contract rights." McConnell, 499 So.2d at 69.
Three years after its decision in Bryant, the first district revisited the issue of whether policy statements contained in employment manuals give rise to enforceable contract rights in this state. In Lurton v. Muldon Motor Co., 523 So.2d 706, 708 (Fla. 1st DCA 1988), an employee claimed that his employer's policy manuals, which the employee helped to write, established a just cause requirement as a prerequisite to termination. The appellate court, citing Bryant and McConnell, held that the policy manual "was nothing more than [an] expression of firm policy [and] not an enforceable contract term." Lurton, 523 So.2d at 709. Moreover, absent a bargained for agreement, the performance of additional acts above and beyond the scope of one's duty as an employee does not support transforming the employer's policies into contractual obligations. Lurton, 523 So.2d at 709.
*578 The first district recently reaffirmed the long-standing principle that policy statements contained in employment manuals do not give rise to enforceable contract rights in Florida. In Linafelt v. Bev, Inc., 662 So.2d 986, 988 (Fla. 1st DCA 1995), a maintenance supervisor was advised upon hire that his employment would be governed by the employer's policies and procedures, and he signed a statement to that effect. The maintenance supervisor understood that if he secured passing grades for the maintenance department for state and intra-company inspections, and complied with the applicable policies and procedures, he could expect a job for the rest of his life. Linafelt at 988. After he was terminated from his employment, the maintenance supervisor sought to allege a breach of "contract" action based upon the employer's written policies and procedures.
The appellate court recognized that the challenged policies and procedures did not "contain within them any expression of definiteness as to an employment contract or its duration." Linafelt, 662 So.2d at 989. Accordingly, the court held that the employer's "unilateral policy statements cannot, without more, give rise to an enforceable contract." Linafelt, 662 So.2d at 989 (citing McConnell, 499 So.2d at 69).
Most recently, the third district again rejected an employee's request to transform his employer's policies into binding contracts. In Osten v. City of Homestead, 757 So.2d 1243, 1244 (Fla. 3d DCA 2000), the employee argued that the City's personnel manual was a contract which guaranteed her certain rights and privileges, including a just cause requirement as a prerequisite to termination. Predictably, the court held that "the provisions of the personnel manual to which the appellant refers are merely a policy manual containing unilateral expectations and do not otherwise give rise to an enforceable contract between the City and the appellant." Osten, 757 So.2d at 1244-45 (citing Linafelt, Lurton, McConnell, Bryant and Muller).
Not surprisingly, federal courts' interpretation of Florida law likewise holds that policy statements contained in employment manuals do not give rise to enforceable contract rights in this state. For example, in LaRocca v. Xerox Corp., 587 F.Supp. 1002, 1003 (S.D.Fla.1984), an employee sued his employer seeking disability benefits that he claimed were owed to him under the employer's policy manual. The trial court held that "lacking any language in the policy expressly providing that the manual is to constitute a separate employment contract, the court must grant [the employer's] motion for summary judgment." LaRocca at 1004. Indeed, the court recognized that "[i]f the policy manual... is to control, [the employee's] case is even more troubled because the manual specifically states that it is not to constitute an independent employment contract." Id. See, e.g., Linafelt, 662 So.2d at 989 (recognizing that the employer's policies and procedures "do not contain within them any expression of definiteness as to an employment contract or its duration"); Muller, 427 So.2d at 268 (adhering to the long-established principle that "an employment contract requires definiteness and certainty in its terms").
Based upon well established law, we hold that in the absence of language in the employee manual expressly providing that the manual constitutes a separate employment agreement, or the parties' explicit mutual agreement to that effect, policy statements in the employment manual do not constitute the terms of a contract of employment.
The Employees counter with the argument that a contract of employment may be part oral and part written; that *579 the parties had an oral contract of employment to be paid on an hourly basis and the manuals set forth the written terms of their compensation. They thus conclude that Quaker Oats and the Employees have an explicit agreement because Quaker Oats had assured the Employees that the policy manuals constituted a binding employment contract. In this case, they contend that whether the parties had a binding partly oral and partly written contract was an issue properly decided by the jury. In support of this contention, they point out that all of the Employees testified that the manuals were indeed contracts; that they considered the manuals to be contracts; and that they were told prior to being hired that the manuals were contracts. A careful review of the record reveals that the substance of the Employees' testimony in this matter was not that Quaker Oats officials had told them the manual was an employment contract, but that it was simply the Employees' understanding that the manuals set forth contractual rights. It is more accurate to surmise that the testimony of some of the Employees amounted to a subjective belief, no doubt inspired by their lawyers, as to the legal import of the documents in question. It should be noted that a witness' belief as to the legal import of the document has no bearing on this issue. Simply because a person believes or desires a document to be a contract does not make it so.
Whether a contract exists in this instance is an issue of law, not fact. Caltagirone v. School Board of Hernando County, 355 So.2d 873 (Fla. 2d DCA 1978). The evidence falls short of establishing, as a matter of law, that a binding contract existed, and hence, the trial court erred in not granting Quaker Oats' motion for a directed verdict.
In ruling on Quaker Oats' Motion for a Directed Verdict, the trial judge observed:
The Court recognizes that as a general principle there may be contracts which are a mix of written terms and oral terms. And whether or not this employee handbook is written terms or part of an oral contract or whether it constitutes a written memorandum of understanding of the terms of an oral contract is a jury question to decide.
When it came time to instruct the jury, however, the trial court gave a simple instruction on written contracts. No instruction on oral contracts, or on mixed oral and written contracts, was given. The case should not have gone to the jury. Even if this were not so, the verdict was erroneously based on the finding by the jury that the handbook in and of itself constituted a written contract. Reversal of the final judgment is warranted on that basis alone.
Because we hold that this case should not have reached the jury, we need not decide the remaining issues. Suffice it to say, however, that in a breach of contract action where the existence of a contract is in dispute, permitting a plaintiffs counsel to repeatedly refer to the manuals as a contract, over the objection of counsel, is reversible error.
We reverse the trial court and remand for entry of a judgment in favor of Quaker Oats. On remand, the trial court may consider whether Quaker Oats is entitled to attorney's fees and costs, and the amount, if any, of such an award.
REVERSED; REMANDED.
GRIFFIN, J., concurs in result only.
PETERSON, J., concurs specially in result only, with opinion.
*580 PETERSON, J., concurring specially in result only.
Stare decisis requires that I concur in the result reached on this appeal. Florida courts will continue to adhere to the established rule that an employer's policy manual is not a contract and it may contain all sorts of unenforceable statements of "policy" calculated to energize employees into a frenzy of production and loyalty. To distribute a policy manual to employees unschooled in the law indicating extra pay is awarded to those working over eight hours in a day or over forty hours in a week with no intent of fulfilling that "policy" is, to say the least, a strange form of promoting goodwill and loyalty.
When a "policy manual" that has been distributed to employees is so specific as to detail when overtime pay is appropriate, I can envision the day when the precedent we follow today will be overturned when facts giving rise to the case are stronger than exist in the instant case.
In my view, a policy manual is appropriate to establish dress codes, employee parking systems, participation in company related social events and other types of benign "policies." A manual should not detail the manner in which overtime pay is to be awarded, contributions to health and retirement plans are to be made or vacation pay is to be earned unless the employer intends to perform. Reservations in the manual can certainly be included that provide for the unilateral withdrawal of unaccrued benefits at the employer's sole discretion in order to provide for economic flexibility.
The ethical consideration is simply this: Don't publish it unless you mean it!
NOTES
[1] Count III, a retaliation claim, was dismissed and is not at issue on appeal.
[2] While not pertinent to our affirmance of the trial court, the statute needs to be clarified by the Florida legislature. What constitutes "manual labor"? What constitutes "extra pay"? A strong argument can be made that the statute is unconstitutionally vague; however, such an analysis is beyond the scope of this opinion.
[3] The instruction given to the jury related only to written contracts. No instruction was given on oral contracts. In the verdict form, the jury was asked to decide the questions: Did Plaintiffs and Defendant have a contract? Did Defendant breach that contract? Did Plaintiffs sustain damages as a result of the breach and if so, what was the amount of damages for each Plaintiff?
[4] All of the employees were on a seven day work week schedule after 1997.