**Thomas CARAVELLO, Plaintiff,**

v.

**AMERICAN AIRLINES, INC., Defendant.**

**No. 03–62087–CIV.**

United States District Court, S.D. Florida, Miami Division.

April 6, 2004.

Barry Steven Mittelberg, Mittelberg & Nicosia, Fort Lauderdale, FL, for Thomas Caravello, plaintiff.

Terence G. Connor, Kara S. Nickel, Morgan Lewis & Bockius, Miami, FL, for American Airlines, Inc., defendant.

### ORDER ON DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS

ALTONAGA, District Judge.

**THIS CAUSE** came before the Court upon Defendant, American Airlines, Inc.'s Motion to Dismiss, or in the Alternative, for Judgment on the Pleadings (**D.E. 1 & 11**). The Court reviewed the written submissions of the parties, applicable law, and heard oral argument on February 9, 2004.

### I. *Legal Standard on a Motion to Dismiss, and Matters Considered*

■ For purposes of a motion to dismiss, the court must accept the allegations of the complaint as true. *United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1236 (11th Cir.1999) (en banc). Moreover, the complaint must be viewed in the light most favorable to the plaintiff. *St. Joseph's Hosp., Inc. v. Hosp. Corp. of America*, 795 F.2d 948, 953 (11th Cir.1986). To warrant a dismissal under Fed.R.Civ.P. 12(b)(6), it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir.1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Nonetheless, to survive a motion to dismiss, a plaintiff must do more than merely label his or her claims. *Blumel v. Mylander*, 919 F.Supp. 423, 425 (M.D.Fla.1996). Thus, dismissal of a complaint or a portion thereof is ap-

propriate when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.1993). In deciding a motion to dismiss, a court may only examine the four corners of the complaint and not matters outside the complaint without converting the motion to dismiss to a motion for summary judgment. *Crowell v. Morgan Stanley Dean Witter Servs., Co., Inc.*, 87 F.Supp.2d 1287, 1290 (S.D.Fla.2000).

■ Defendant, American Airlines, Inc. ("American Airlines") has requested that the Court dismiss Plaintiff, Thomas Caravello's ("Caravello") Complaint with prejudice pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative, enter judgment on the pleadings in favor of American Airlines as to all of Caravello's claims pursuant to Fed.R.Civ.P. Rule 12(c). The Court has analyzed American Airlines' Motion as a motion to dismiss, rather than a motion for judgment on the pleadings. The Court has considered *only* the allegations of the Complaint and the "Agreement Between American Airlines and Transport Workers Union of America, AFL–CIO Covering Fleet Service Employees of American Airlines, Inc." (the "American–TWU Agreement"). The American–TWU Agreement is attached as Tab A to American Airlines' Memorandum of Law in Support of its Motion to Dismiss,[1] and is incorporated by reference in Count I of the Complaint. Therefore, the American–TWU Agreement is properly considered without converting American Airlines' Motion to Dismiss into a motion for judgment on the pleadings or a motion for summary judgment. *See, e.g., Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir.1997) ("where the plaintiff refers to

---

**1.** There are other exhibits attached to American Airlines' Memorandum of Law in Support of its Motion to Dismiss, which are not considered.

certain documents in the complaint and these documents are central to the plaintiff's claim, then the court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment").

## II. *Allegations of the Complaint*

Caravello was employed by American Airlines for ten years and ten months as a ground service representative (or fleet service clerk), and his duties included baggage handling, freight forwarding and cleaning. Caravello suffers from asthma and, as a result, was perceived by American Airlines as being disabled, and "was often encouraged not to take additional time off from work to treat this condition despite the fact that the condition necessitated medical treatment." (Complaint, ¶ 7). It is alleged that Caravello is a member of the Transport Workers Union of America, AFL–CIO ("TWU"), and is a third party beneficiary to the American–TWU Agreement between American Airlines and TWU, Local 568. The American–TWU Agreement is alleged to be the "Employment Agreement" or "Contract for Employment" between Caravello and American Airlines. (*Id.*, ¶¶ 9–10).

Pursuant to the American–TWU Agreement, American Airlines established Rules of Conduct. Paragraph 34 of the Rules of Conduct provides:

34. Dishonesty of any kind in relations with the Company, such as theft or pilferage of Company property, the property of other employees or property of others entrusted to the Company, or misrepresentation in obtaining employee benefits or privileges will be grounds for dismissal and, where the facts warrant, prosecution to the fullest extent of the law. Employees charged with a criminal offense on or off duty, may immedi-

ately be withheld from service. Any action constituting a criminal offense, whether on or off duty will be grounds for dismissal.

(Complaint, ¶ 12).

On or about August 25, 2000, criminal charges were filed against Caravello for illegal use of a home computer. Caravello pled no contest to the charges and adjudication was withheld. Caravello promptly informed American Airlines of these charges. On or about May 8, 2002, American Airlines suspended Caravello based on the criminal charges. Three weeks later, on May 31, 2002, Caravello was terminated from his employment based on his "criminal conduct" in violation of paragraph 34 of American Airlines' Rules of Conduct.

The American–TWU Agreement, a collective bargaining agreement, was entered into on March 1, 2001 between TWU, as representative of the fleet service employees, and American Airlines pursuant to the terms of the Railway Labor Act, as amended. The Agreement provides in its preamble that "[i]n making this Agreement, both the company and the employees hereunder recognize their duty to comply with the terms hereof and to cooperate fully, both individually and collectively, for the accomplishment of the intent and purpose of this Agreement." The Agreement recognizes the TWU "as the exclusive and sole collective bargaining agency, with respect to rates of pay, **rules** and working conditions, for all [fleet service employees, like Caravello] within the United States." (American TWU–Agreement, Article 1) (emphasis added). Article 28 further states, in relevant part:

(a) The Company and the Union agree to make it a matter of record in this Agreement that in accordance with the established policy of the Company and the Union, the provisions of this Agreement will apply equally to all employees

regardless of sex, color, race, creed, **age, religious preferences, status as a veteran or military reservist, disability** or national origin.

(b) The Union recognizes that the Company **will** have sole jurisdiction of the management and operations of its business, the direction of its working force, the right to maintain discipline and efficiency in its hangars, stations, shops or other places of employment, and the right of the Company to hire, discipline and discharge employees for *just cause,* subject to the provisions of this Agreement. It is agreed that the rights enumerated **in this Article will** not be deemed to exclude other preexisting rights of management not enumerated which do not conflict with other provisions of this Agreement.

(c) Any decisions or agreements related to the interpretation or application of this Agreement made jointly by the Company and the Union **will** be binding on every individual employee claiming or entitled to the benefits of this Agreement.

(*Id.,* Article 28(a), (b), (c)) (bold emphasis in original; italics emphasis added). Thus, under Article 28 of the American–TWU Agreement, American Airlines has sole jurisdiction over the management and operation of its business, including the right to discharge employees **for just cause.**

Article 30 sets forth the exclusive internal grievance procedure for any employee covered under the American–TWU Agreement who is **dismissed** by American Airlines, providing for investigation by and appeal to the "Chief Operating Officer," followed by an opportunity to appeal the Chief Operating Officer's decision to the appropriate Board of Adjustment under Article 32. Article 31 provides the exclusive internal grievance procedure for any employee covered by the American–TWU Agreement who believes that he or she

has been unjustly dealt with by American Airlines. Under Article 31, a grievance must first be presented to the employee's immediate supervisor for investigation and decision. The employee may then appeal the supervisor's decision to the Chief Operating Officer, and appeal the Chief Operating Officer's decision to the Boards of Adjustment created by Article 32.

Article 32 provides, in relevant part:

(1) Pursuant to the provisions of the Railway Labor Act, as amended, **the parties** established a System Board of Adjustment, and Area Boards of Adjustment **for employees covered by this Agreement.**

(2) The Boards will have jurisdiction only over disputes between the Company and the Union or any employee or employees governed by this Agreement growing out of grievances involving interpretation or application of this Agreement **including disputes over the content of an employees [sic] personnel file, whether hard copy or electronic, to the extent such information can be used for discipline.** The Boards will have no jurisdiction, whatsoever, over proposals or disputes relating to general changes in hours of work, rates of pay, rules or working conditions. . . .

(*Id.,* Article 32(a)(1), (2)) (emphasis in original). Under Article 32, an employee may request a hearing before the Boards of Adjustment for grievances involving the interpretation or application of the American–TWU Agreement, including discharges from employment by American Airlines for just cause pursuant to Article 28.

In Count I, Caravello asserts a claim for breach of contract based on "wrongful termination" of his employment with American Airlines. Caravello makes the following allegations in Count I:

19. That the **Defendant, AMERICAN AIRLINES, INC., has failed to comply**

with the requirements of its Employment Agreement and terminated Plaintiff under the guides [sic] of his violation of the rules and regulations of AMERICAN AIRLINES, INC.

20. In fact, Plaintiff was terminated with the sole object of replacing him with younger personnel, reducing salary costs, and avoiding its [sic] obligation.

21. The termination of Plaintiff was wrongful and a breach of the aforesaid agreement in that performance by the Plaintiff was wholly satisfactory and not detrimental to the interest of the Defendant.

22. Since the date of Plaintiff's termination, Defendant has failed and refused, and continues to fail and refuse to permit Plaintiff to perform.

23. As a proximate result of the Defendant's breach of Plaintiff's Employment Agreement, Plaintiff has suffered and continued to suffer substantial losses in earnings, retirement benefits, and other employee benefits which they [sic] would have received had Defendant not breached the Agreement.

(Complaint, ¶¶ 19–23) (emphasis added).

Prior to bringing this lawsuit, Caravello filed a discrimination complaint with the Equal Employment Opportunity Commission and obtained a right to sue letter from that administrative agency.

### III. *Legal Discussion* [2]

■■■■ American Airlines maintains that Caravello's breach of contract claim is preempted by the Federal Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*,[3] which established a framework for the res-

olution of "disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 153 First (i); 45 U.S.C. § 184. Disputes "growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions" are known as "minor disputes." Minor disputes must be resolved through the exclusive grievance procedures of the RLA rather than in federal court. *Pyles,* 79 F.3d at 1050 (citing *Union Pacific R.R. Co. v. Sheehan,* 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978)); *see Andrews v. Louisville & Nashville R.R. Co.,* 406 U.S. 320, 325, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). This is because "RLA preemption divests the state and federal courts of subject matter jurisdiction over 'minor disputes.' " *Leu v. Norfolk & Western Ry. Co.,* 820 F.2d 825, 828 (7th Cir.1987) (citation omitted). *See Int'l Ass'n of Machinists and Aerospace Workers, AFL–CIO v. Aloha Airlines, Inc.,* 776 F.2d 812, 815 (9th Cir.1985) ("Federal courts have no jurisdiction to resolve minor disputes.") (citations omitted).

■■■■ In contrast to minor disputes are the "major disputes," which involve the formation of agreements or creation of contract rights. *See Consol. Rail Corp. v. Railway Labor Executives' Ass'n,* 491 U.S. 299, 305, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989). The distinguishing characteristic of minor disputes is that they " 'may be conclusively resolved by interpreting the existing [collective bargaining] agree-

---

**2.** American Airlines' Motion to Dismiss addresses Counts I and II of the Complaint. Since the filing of American Airlines' Motion, however, Count II has been dismissed pursuant to a Joint Stipulation of Voluntary Dismissal With Prejudice (D.E. 16 & 17). There-

fore, the Order addresses only the arguments relating to dismissal of Count I.

**3.** "Most of the provisions of the RLA apply to labor relations in the airline industry." *Pyles v. United Air Lines, Inc.,* 79 F.3d 1046, 1049 (11th Cir.1996) (citing 45 U.S.C. § 181).

ment.'" *Pyles,* 79 F.3d at 1049–50 (quoting *Consol. Rail Corp.,* 491 U.S. at 304, 109 S.Ct. 2477). "The fact that *reference* to a CBA may be required, particularly where factual issues are involved, is insufficient of itself to preempt an independent state-law claim; only where interpretation of a CBA is required will the claim be [considered a minor dispute and be] preempted." *Id.* at 1050 (emphasis in original) (citing *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994)). *See Pilkington v. United Airlines,* 112 F.3d 1532, 1538 (11th Cir.1997) (citation omitted).

American Airlines argues that Count I is a "minor dispute" for RLA preemption purposes. Caravello maintains that his claim is not a "minor dispute" because it does not mandate that the court analyze any part of the American–TWU Agreement in determining whether there was a wrongful termination. He insists his claim is independent of the collective bargaining agreement because it is based solely on the Rules of Conduct established by American Airlines, not on the collective bargaining agreement, and therefore does not require interpretation of the collective bargaining agreement to resolve.

■ Count I asserts a state law breach of contract claim for "wrongful termination" on the basis that Caravello's discharge from employment was a breach of the American–TWU Agreement. Caravello alleges that American Airlines terminated him under the guise of his violation of American Airlines' Rules of Conduct. However, these workplace rules or regulations alone do not give rise to enforceable contract rights under Florida law. *See, e.g., McConnell v. Eastern Air Lines, Inc.,* 499 So.2d 68, 69 (Fla. 3rd DCA 1986) (employers' letters, executive memoranda,

and employee handbooks assuring at-will employees that they will not be terminated without just cause constitute "unilateral policy statements" and cannot, without more, give rise to enforceable contract rights) (citing *Muller v. Stromberg Carlson Corp.,* 427 So.2d 266, 270 (Fla. 2d DCA 1983)); *Bryant v. Shands Teaching Hosp. and Clinics, Inc.,* 479 So.2d 165, 168 (Fla. 1st DCA 1985).[4] Under Florida law, policy statements contained in an employment manual, including workplace rules of conduct, do not give rise to enforceable contract rights in the absence of language expressly providing that the manual constitutes a separate employment agreement, or the parties' explicit mutual agreement to that effect. *Quaker Oats Co. v. Jewell,* 818 So.2d 574, 576–78 (Fla. 5th DCA 2002). Caravello does not allege that there was express language in American Airlines' employee handbook or policies and procedures manual, or that there was any mutual agreement, that would make American Airlines' Rules of Conduct a separate employment agreement providing for termination only upon the conditions stated. Moreover, as noted by the Third Circuit, "[i]f each time an employee is terminated, he or she could avoid the RLA's mandatory procedure by claiming that the termination was not a violation of the collective bargaining agreement, but rather a breach of some oral or written representation (such as an employee handbook)[,] . . . the RLA's purposes and procedures would easily be thwarted." *Capraro v. United Parcel Serv. Co.,* 993 F.2d 328, 333 (3d Cir.1993).

■ Caravello has not alleged any basis for his "wrongful termination" claim that is independent of his rights as provided in the American–TWU Agreement.

---

4. *See also Osten v. City of Homestead,* 757 So.2d 1243, 1244 (Fla. 3d DCA 2000); *Linafelt v. Bev, Inc.,* 662 So.2d 986, 988 (Fla. 2nd DCA 1995); *Lurton v. Muldon Motor Co.,* 523 So.2d 706, 708 (Fla. 1st DCA 1988).

*See McCuin v. The Burlington Northern and Santa Fe Ry. Co.,* 2002 WL 31802845, *4 (N.D.Tex.2002) (finding no evidence of any contract that might form the basis of a wrongful termination claim, except the collective bargaining agreement, which plaintiff referenced in the complaint, and therefore concluding that plaintiff's causes of action for wrongful termination and breach of the labor agreement were both premised on the collective bargaining agreement). He specifically alleges that American Airlines established its Rules of Conduct pursuant to the American–TWU Agreement. (Complaint, ¶ 11). The American–TWU Agreement is the only employment agreement that Caravello has alleged existed, and it contains language regarding proper grounds for termination of an employee, *i.e.,* employees could only be discharged for just cause. Count I is based solely on a breach of the collective bargaining agreement, and does not rely upon any separate and independent rights under state or federal law. Therefore, resolution of this claim necessarily requires interpretation and application of the American–TWU Agreement. *See Pyles,* 79 F.3d at 1050 ("Because the CBA is the only potential source of *any* rights [the plaintiff] may have to employment with [defendant], one must interpret the CBA to determine what those rights are").

In a case with similar facts, *Taylor v. American Airlines,* 943 F.Supp. 1164, 1167–68 (W.D.Mo.1996), a fleet service clerk for American Airlines alleged that American Airlines had (1) breached the collective bargaining agreement between his union and American Airlines by administering a drug test without probable cause, and (2) wrongfully terminated him based on the positive results of that test. American Airlines argued that it had a contractual right under the collective bargaining agreement to give plaintiff a drug test because he appeared to be under the influence of alcohol immediately prior to the test. Like here, Article 28 of the collective bargaining agreement provided that American Airlines had sole jurisdiction over the management and operation of its business, including the right to discharge employees for just cause. Plaintiff had also received an employee handbook setting forth the company's Rules of Conduct and stating that a violation for any rule may be grounds for dismissal. American Airlines' Rule of Conduct 33 prohibited employees from possessing, dispensing or using certain drugs, except with medical authorization; Regulation 135–Idg provided that American Airlines may require a drug and/or alcohol test whenever there is reasonable suspicion to believe that an employee is using or has used a prohibited drug; and Regulation 135–IL provided that any employee with a verified positive prohibited drug test result will be terminated for violation of Rule 33. Addressing the first "breach of union contract" claim, the court held that "[b]ecause American Airlines' decision to administer a drug test to [plaintiff] was arguably justified by the terms of the CBA, [plaintiff's] claim constitutes a minor dispute." *Id.* at 1167. With respect to plaintiff's second claim for "wrongful termination," the court also found this to be a minor dispute because "whatever right [plaintiff] had not to be discharged was grounded in the CBA" because "[t]he dispute about whether [plaintiff] was wrongfully discharged stems from the differing interpretations given to the CBA by American Airlines and [plaintiff]." *Id.* at 1168.

In reaching this determination, the *Taylor* court cited *Andrews v. Louisville & Nashville R.R. Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95, in which the Supreme Court stated:

The fact that [plaintiff] characterizes his claim as one for 'wrongful discharge' does not save it from the [RLA's] mandatory provisions for the processing of

grievances.... [T]he very concept of 'wrongful' discharge implies some sort of statutory or contractual standard that modifies the traditional common-law rule that a contract of employment is terminable by either party at will. Here it is conceded by all that the only source of [plaintiff's] right not to be discharged, and therefore to treat an alleged discharge as a 'wrongful' one that entitles him to damages, is the collective-bargaining agreement between the employer and the union.... The existence and extent of such obligation in a case such as this will depend on the interpretation of the collective-bargaining agreement. Thus [plaintiff's] claim, and [the employer's] disallowance of it, stem from differing interpretations of the collective-bargaining agreement.... [The plaintiff's] claim is therefore subject to the [RLA's] requirement that it be submitted to the Board for adjustment.

406 U.S. at 323–25, 92 S.Ct. 1562.

The reasoning of the courts in *Andrews* and *Taylor* applies equally here. American Airlines is an air carrier governed by the RLA. American Airlines' right to discipline or discharge Caravello must be examined and justified under the terms of the American–TWU Agreement, which is necessarily the source of Caravello's claim that his termination was wrongful. Absent the American–TWU Agreement, Caravello would have been subject to termination at the will of American Airlines.

The question of whether Caravello was "wrongfully terminated" under the American–TWU Agreement will require extensive interpretation and construction of that collective bargaining agreement, the only agreement alleged to contain language tak-

ing this employment relationship out of the at-will context.[5] Specifically, resolution of Caravello's claim for "wrongful termination" requires application of Article 28 of the American–TWU Agreement to determine whether American Airlines' decision to discharge Caravello for a violation of its Rules of Conduct constituted "just cause." The Court concludes that Caravello's breach of contract claim constitutes a "minor dispute," which is subject to the exclusive jurisdiction of the Boards of Adjustment created by the American–TWU Agreement in compliance with the RLA, and this Court's subject matter jurisdiction is preempted by that statute.

## IV. *Conclusion*

For the foregoing reasons, it is

**ORDERED AND ADJUDGED as follows:**

1. Defendant's Motion to Dismiss, or in the Alternative, for Judgment on the Pleadings **(D.E. 1 & 11)** is **GRANTED.** Count I of the Complaint is DISMISSED with prejudice.

2. If Defendant seeks to recover attorney's fees and costs, it shall file a separate motion for attorney's fees and costs in accordance with S.D. Fla. L.R. 7.3 within thirty **(30) days** from the date of this Order.

---

5. Florida follows the general common-law rule of at-will employment, which is that, absent a contract providing otherwise, an employee can be discharged at any time, as long as he or she is not terminated for a reason

prohibited by law, such as retaliation or unlawful discrimination. *See, e.g., Leonardi v. City of Hollywood,* 715 So.2d 1007, 1008 (Fla. 4th DCA 1998) (citation omitted).