[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-14816
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 25, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-22323-CV-ASG

JOHN B. HAMPTON,

                                                            Plaintiff-Appellant,

versus

CITY OF SOUTH MIAMI, a Florida municipality,
CHARLES D. SCURRY,
ORLANDO MARTINEZ,
JEANETTE NAVARRO,

                                                            Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 25, 2006)**

Before BLACK, BARKETT and MARCUS, Circuit Judges.

PER CURIAM:

John B. Hampton, an African-American male, appeals from the district court's grant of summary judgment to the City of South Miami ("the City") as to his claims for breach of contract and the covenant to perform in good faith, under Florida law, and race discrimination, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq. ("Title VII"), 42 U.S.C. §§ 1981, 1983, and the Florida Civil Rights Act ("FCRA").[1] On appeal, Hampton argues that, in connection with the entry of summary judgment, the district court improperly made factual findings relating to credibility and disputed evidence and failed to draw all permissible factual inferences in favor of him. After careful review, we affirm.

In the complaint, Hampton alleged that he was terminated because of his race and in retaliation after he spoke to the Mayor of the City and a City Commissioner about (1) misuse of City personnel to maintain private vehicles at Public Works Director Orlando Martinez's direction, and (2) discriminatory practices against African-American employees within the Public Works Department. The City's reasons for firing Hampton included his failure to disclose on his job application that (1) he had been arrested for having a suspended license and for missing commercial markings on his truck; (2) prior to his resignation from

---

[1]After a de novo review, we find no error in the district court's disposition of Hampton's retaliation claims and, accordingly, affirm on the basis of the district court's well-reasoned analysis.

his prior job at the City of Coral Gables, he was recommended for termination after he admitted depositing a stolen check into his own account; and (3) he previously had been employed by United Parcel Service ("UPS"). In his complaint, Hampton alleged that the foregoing reasons were pretextual and that the true reason for his termination was discrimination and retaliation based on race.

We review de novo the district court's grant of a motion for summary judgment, viewing all evidence and factual inferences in the light most favorable to the nonmoving party. Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1060 (11th Cir. 1994). "Summary judgment is appropriate where the evidence shows 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'265 F.3d 1186, 1192 (11th Cir. 2001) (quoting Fed. R. Civ. P. 56(c)).

On appeal, Hampton first argues, in connection with the entry of summary judgment on his breach-of-contract claim and attendant covenant to perform in good faith, that the City Code provides for discharge of permanent City employees only for lack of "good behavior, the satisfactory performance of work, necessity for the performance of work, and the availability of funds." Hampton contends that City Manager Charles D. Scurr disregarded the Code and instead followed Director Martinez's recommendation to fire Hampton for a reason (the job

3

application omissions) not found within the Code. Hampton asserts that the following issues should have been submitted to a jury: (1) whether his failure to disclose two arrests on his application constituted misconduct because the arrests were for non-moving traffic violations; (2) whether his failure to disclose the events preceding his resignation from his position at the City of Coral Gables constituted misconduct because his record indicates only that he voluntarily resigned; and (3) whether his failure to disclose his previous employment by UPS constituted misconduct because the City job application form requested only ten years of history. We disagree.

Under Florida law, "in the absence of language in the employee manual expressly providing that the manual constitutes a separate employment agreement, or the parties' explicit mutual agreement to that effect, policy statements in the employment manual do not constitute the terms of a contract of employment." Quaker Oats Co. v. Jewell, 818 So. 2d 574, 578 (Fla. Dist. Ct. App. 2002). Moreover, in Florida, "[a]n employee may be terminated at will, without a showing of cause, where the employment contract between the parties is indefinite as to the period of employment." Linafelt v. Bev, Inc., 662 So. 2d 986, 989 (Fla. Dist. Ct. App. 1995).

Here, the City's personnel policies and Code did not contain language expressly providing that they constituted a separate employment agreement. Moreover, even if we may infer an employment contract from the policies and procedures embodied in the Code and personnel manual, because "no definite period of employment" was included for Hampton, under Florida law he could be terminated at will. Accordingly, we discern no error in the entry of summary judgment on the breach-of-contract and covenant-to-perform-in-good-faith claims.

Turning to Hampton's discrimination claims under Title VII and the FRCA, Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).[2] "Where, as here, a plaintiff predicates liability under Title VII on disparate treatment and also claims liability under sections 1981 and 1983, the legal elements of the claims are identical." Stallworth v. Shuler, 777 F.2d 1431, 1433 (11th Cir. 1985). We apply the analytical framework established in McDonnell Douglas Corp. v. Green, 411

---

[2] Federal case law interpreting Title VII is applicable to cases arising under the FCRA. See Florida State Univ. v. Sondel, 685 So.2d 923, 925 n.1 (Fla. Dist. Ct. App. 1996); see also Wilbur v. Corr. Servs. Corp., 393 F.3d 1192, 1195 n.1 (11th Cir. 2004) (noting in a retaliation case that the FCRA is patterned after Title VII and no independent analysis of the claim under the FCRA is necessary).

5

U.S. 792 (1973), and Texas Dep't of Comty. Affairs v. Burdine, 450 U.S. 248 (1981) when a Title VII plaintiff uses circumstantial evidence to prove his case. Durley v. APAC, Inc., 236 F.3d 651, 655 (11th Cir. 2000).[3]

Under the McDonnell Douglas framework, a plaintiff first must show an inference of discriminatory intent, and thus carries the initial burden of establishing a prima facie case of discrimination. See McDonnell Douglas, 411 U.S. at 802. The plaintiff's successful assertion of a prima facie case "creates a rebuttable presumption that the employer unlawfully discriminated against her." E.E.O.C. v. Joe's Stone Crab, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002) (citing U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714 (1983)). If the plaintiff

---

[3] Hampton may prove a prima facie claim of discrimination through (1) direct evidence, (2) circumstantial evidence, or (3) statistical proof. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990). We have "defined direct evidence as evidence, which if believed, proves the existence of fact in issue without inference or presumption." Bass v. Bd. of County Comm'rs, Orange County, Fla., 256 F.3d 1095, 1112 (11th Cir. 2001) (quotations and emphasis omitted). Because statements of discriminatory intent must be made by a person involved in the challenged decision to constitute direct evidence of discrimination, "remarks by non-decision makers or remarks unrelated to the decision-making process itself are not direct evidence of discrimination." Id. at 1105.

We are unpersuaded by Hampton's argument that a racial slur made by Director Martinez constituted direct evidence of discrimination and disparate treatment, which precluded summary judgment. Because Scurr was the decision maker here and Hampton points to no direct evidence relating to Scurr, the slur by Martinez, a non-decisionmaker, does not constitute direct evidence of discrimination. Id. Moreover, on this record, we cannot find that Scurr acted as a "mere conduit" for Martinez's racial animus as it was undisputed that Scurr relied on Police Chief Cokes Watson's independent report and Hampton's predetermination hearings and did not rely solely on Martinez's "biased recommendation." See Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1332 (11th Cir. 1999).

successfully demonstrates a prima facie case, the burden then shifts to the employer to produce evidence that its action was taken for a legitimate, non-discriminatory reason. See Joe's Stone Crab, 296 F.3d at 1272. "Should the employer meet its burden of production, the presumption of discrimination is rebutted, and the inquiry 'proceeds to a new level of specificity,' in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination." Id. at 1272-73 (quoting Burdine, 450 U.S. at 255-56). "Although the intermediate burdens of production shift back and forth, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff." Id. at 1273.

After assuming that Hampton met his initial prima facie burden, the district court proceeded to the second step of the McDonnell Douglas inquiry and held that the City articulated legitimate, non-retaliatory reasons for its employment decision -- namely, that Hampton's employment application included falsifications and omissions. At the third step of the inquiry, to establish pretext, Hampton had to

> demonstrate that the proffered reason was not the true reason for the employment decision . . . [The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (alteration in original) (quotations and citation omitted). Thus, Hampton was required to produce sufficient evidence to allow a reasonable finder of fact to conclude that the City's articulated reasons were not believable. Id. He could do this by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proferred explanation. Id.

"[T]o avoid summary judgment [the plaintiff] must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993) (citation omitted). A reason is not pretext for discrimination "unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).

After our own careful review of the record, we can find no error in the district court's analysis and conclusion that Hampton did not satisfy his burden at the third step of the McDonnell Douglas inquiry. Indeed, in its thorough and well-reasoned opinion, applying this Court's settled case law on the subject, the court considered and rejected virtually every argument raised in this appeal. On the basis of the district court's thorough and well-reasoned analysis of Hampton's discrimination claims, we affirm.

**AFFIRMED.**